UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                  Case No. 18-cv-196-pp

ZACHARY E. CLOYD,

Defendant.

**ORDER SUSTAINING GOVERNMENT'S OBJECTIONS (DKT. NO. 32),
REVERSING MAGISTRATE JUDGE'S ORDER GRANTING DEFENDANT'S
MOTION FOR HEARING UNDER <u>FRANKS V. DELAWARE</u> (DKT. NO. 29) AND
DENYING DEFENDANT'S MOTION FOR <u>FRANKS</u> HEARING (DKT. NO. 13)**

## I.     Introduction

The grand jury charged the defendant with being a felon in possession of
a firearm, possessing Ecstasy with intent to distribute and possessing a firearm
in furtherance of a drug offense. The drugs and gun the defendant is alleged to
have possessed were recovered on August 24, 2018 by officers of the
Milwaukee Police Department when they searched the defendant's residence at
2629 North 8th Street in Milwaukee. The officers had a warrant for the search;
three days earlier, on August 21, 2018, Milwaukee Police Officer Ndiva Malafa
had signed an affidavit indicating that a reliable informant had seen the
defendant with a gun at the 8th Street residence within the week prior, and
had told Malafa that the defendant armed himself with the gun inside the
residence to protect himself from other armed drug dealers in the
neighborhood. The affidavit also said that a second informant had seen the
defendant with a gun during drug transactions within the past month. Based
on this affidavit, Milwaukee County Court Commissioner J.C. Moore issued the

1

warrant whose execution resulted in the evidence that supports the federal charges against the defendant.

What brings the case before the court is the defendant's motion for a hearing under <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), to determine whether Malafa intentionally or recklessly provided false or misleading information in that August 21, 2018 affidavit, or whether he intentionally or recklessly omitted material information from the affidavit. The defendant insists that Malafa did, because in the two months prior to signing the affidavit for the North 8th Street warrant, Malafa was the affiant in two other search warrant applications—one for a warrant to search the home of the defendant's mother's boyfriend (Individual A), and one to search a residence on North 28th Street in Milwaukee, which an unidentified informant had told Malafa was the defendant's "prior" residence. The defendant believed when he filed the motion that Individual A was the "confidential" informant who provided information for both the 28th Street and 8th Street affidavits, that Individual A was not reliable and that Malafa had reason to know that Individual A was unreliable due to Malafa's involvement in the two prior searches. The government disagrees, arguing that the Individual A issue is a red herring. The magistrate judge granted the defendant's motion for a <u>Franks</u> hearing, and the government has objected.

## II.    Procedural History

The grand jury returned a three-count indictment charging that on August 24, 2018, the defendant possessed a firearm knowing that he'd previously been convicted of a felony, possessed with intent to distribute MMDA (Ecstasy) and knowingly possessed a firearm in furtherance of a drug trafficking offense. Dkt. No. 1. The defendant filed a motion to compel the

government to disclose the identity of the confidential informant described in the search warrant that led to the defendant's arrest, dkt. no. 14, and a motion requesting a <u>Franks</u> hearing, dkt. no. 13. The motion to compel asked the assigned magistrate judge, David E. Jones, to order the government to disclose whether Individual A—the defendant's mother's boyfriend—was the informant for either warrant, or in the alternative, to disclose whether the same informant provided information for both warrants. Dkt. No. 14 at 4-6. The defendant also asked Judge Jones to require the government to provide "some information" about the "remarkable" track record of the informant who'd provided information for the affidavit in support of the warrant that had led to the federal charges. <u>Id.</u> at 6-7.

The government opposed the motion to compel, dkt. no. 15, and the defendant filed a reply, dkt. no. 20. Judge Jones scheduled a hearing on the motion to compel (not a <u>Franks</u> hearing) for January 18, 2019.

In a letter filed the day before the January 18, 2019 hearing, the defendant told Judge Jones that paragraph 34 of the affidavit in support of the warrant (the "8th Street" affidavit, to distinguish it from the affidavit supporting the warrant to search the 28th Street address) referred to a second informant who claimed to have seen the defendant with a gun within thirty days prior to the date the affidavit was signed. Dkt. No. 22 at 1. The defendant expressed concern that the second informant referenced in the 8th Street affidavit might be the same informant who'd provided information for the 28th Street affidavit, and opined that the informant who'd provided the information for the 28th Street affidavit had turned out to be wrong. <u>Id.</u> The defendant asked that the court include a discussion of this second informant's identity at the January 18 hearing. <u>Id.</u> at 2.

At the January 18 hearing, defense counsel indicated that he wasn't seeking the identities of the informants—he just wanted to know if the secondary informant referenced in the 8th Street warrant was the same person who'd provided the information for the 28th Street warrant, as well as to know whether either informant was Individual A and whether the same informant provided information for both affidavits. Dkt. No. 23 at 1. The government declined to state whether Individual A was the informant, stated that it believed that there were different informants for the two affidavits but that it wasn't sure; it stated that even if it learned that information, it wasn't sure it could disclose it. Id. As to the "track record" of the 8th Street informant, defense counsel indicated that he wanted some verification of the time frame during which the 8th Street CI had provided the information leading to over 100 warrants, such as a document indicating how many warrants had resulted during particular periods. Id. at 1-2.

During the hearing, defense counsel's investigator testified that it was the defendant's mother, Aretha Johnson, who had told him that she believed that the informant for both the 28th Street and the 8th Street warrants was her boyfriend, Individual A. Id. at 2.

In a February 19, 2019 order, Judge Jones partially granted the motion to compel. Dkt. No. 24. He concluded that the defendant's request for the court to order the government to disclose whether the same informant had provided information for both warrants was moot; the government had confirmed "that the informant referenced in the first warrant is not the same informant referenced in the second warrant." Id. at 2. Judge Jones also denied the defendant's request that he order the government to confirm whether Individual A was either informant. Id. Judge Jones granted the motion,

however, to the extent that he ordered the government to tell the defendant the year the 8th Street informant began working with law enforcement and how many search warrants had resulted from that informant's information between March 13, 2018 and August 21, 2018. Id. at 13.

Several months later, after the parties had fully briefed the motion for a Franks hearing, Judge Jones granted that motion, dkt. no. 29; the government filed an objection (appealing only the order granting the request for the Franks hearing, not the order partially granting the motion to compel), dkt. no. 32.

## III.    **Factual Background**

The charges against the defendant resulted from items—a gun and eighty-four grams of marijuana, .19 grams of crack, seven Ecstasy tablets and twenty-one Oxycodone tablets—recovered during the execution of a search warrant at 2629 North 8th Street on August 24, 2018, as well as the defendant's post-arrest statement admitting to possession of the gun and to sometimes selling marijuana and Ecstasy. Dkt. No. 13 at 9. Officer Malafa signed the affidavit in support of the warrant on August 21, 2018. Dkt. No. 13-8. The affidavit was reviewed by Assistant District Attorney Jessica Bellows, id. at 9, and Commissioner Moore issued the warrant on the same day—August 21, 2018, id. at 1.

Much of Officer Malafa's August 21, 2018 affidavit consists of boilerplate. It said that he had, at the time of the affidavit, been a Milwaukee Police Officer for three and a half years. Dkt. No. 13-8 at 1. It described his experience in investigating narcotics cases, working with informants, investigating gun cases and drafting and executing search warrants. Id. at 1-2.

Paragraph 8 of the affidavit stated that the application for the search warrant was based "in part" on information that Malafa received "from a

confidential informant (who is a subject who gave a statement against their own penal interest) regarding drug activity" at the address to be searched. Id. at 4. This paragraph is followed by four paragraphs of boilerplate about how to determine the reliability of informants. Id. at 4-5. At paragraph 13, Malafa stated that he believed the informant was

> a credible person because the statement made by the confidential informant shows that the confidential informant's knowledge was based on the confidential informant's personal involvement in the purchase of narcotics and how and from whom the confidential informant purchases narcotics from; that the amount of detail provided by the confidential informant to a law enforcement officer would tend to reasonably infer that the confidential informant had gained this information in a reliable way; specifically, statements made by the confidential informant indicating the delivery arrangements, the date of the most recent purchase by the confidential informant are all statements against the penal interest of the confidential informant; that these statements against the confidential informant's penal interest is one that tends to subject the confidential informant to criminal liability and that a reasonable person in the confidential informant's position would not have made unless believing it to be true; lastly that the fact that the confidential informant implicated himself/herself in the crimes and gave information that could have been provided only by one who was involved in the crimes is sufficient to establish the credibility of the confidential informant . . . .

Id. at 5.

At the end of page 5 of the nine-page affidavit, Malafa got to the information specific to the defendant. Paragraph 15 stated that Malafa knew "through information provided by a reliable, confidential informant, and personal involvement in this investigation and through reports and documents maintained in the regular course of City of Milwaukee Police Department business" that the address on North 8th Street was "being used by [the defendant] . . . a convicted felon, to store a firearm in a residence he lives in and controls" at that address. Id. at 5-6. Paragraph 16 stated that Malafa "was

informed that within the past seven (7) days by a reliable confidential informant . . . who wishes to remain anonymous due to its intimate knowledge about [the defendant] that the informant had observed [the defendant] with a firearm at the [North 8th Street] residence." Id. at 6. It averred that the informant had stated that the defendant "arms himself with the firearm inside his residence and uses it to protect them from other armed drug dealers that reside in the area . . . ." Id.

In the next paragraph—paragraph 17—Malafa expressed his confidence that the informant was knowledgeable about weapons. Id. Malafa said that he'd confirmed "through interrogation of the informant" that the informant had a "very sound understanding of firearms basics," and that he/she "knew the difference between semi-automatic weapons, revolvers, rifles, shotguns and non-firearm weapons like compressed air guns." Id. Malafa also stated that the informant was knowledgeable about handling guns, "and why firearms are used by subject(s) suspected of being involved in illegal activity . . . ." Id.

Paragraph 18 is particularly relevant to the issue before the court. That paragraph reads:

> Affiant knows through past experience that [the defendant] is involved in the trafficking of Heroin and Cocaine base; the affiant executed a search warrant at [the defendant's] prior residence within the last thirty (30) days, in which indicia of narcotics trafficking and unlawful possession of firearms were located . . . .

Id.

In paragraph 19, Malafa said that the informant told him that the defendant operated a Green Pontiac Grand Prix with Wisconsin license place number ADD 4632; Malafa said he knew from his own personal observation that the green Pontiac had been on the "curtilage" of the North 8th Street address "within the last 48 hours . . . ." Id.

Paragraph 20 indicated that Malafa knew from another law enforcement officer that there was a lot of foot traffic going to and from the North 8th Street residence, and that Malafa knew from his training and experiences "that a high amount of short term visits, where individuals enter the residence and shortly thereafter leave, is consistent with narcotic distribute . . . ." Id.

In paragraph 21, Malafa stated that he knew "from personal observation" that the defendant left the North 8th Street residence, opened the driver's side door of the green Pontiac "and then proceeded to enter the rear (southwest) side door of the residence" at North 8th Street; the paragraph does not say when Malafa observed this. Id.

Paragraph 22 states that the informant told Malafa that the defendant had a felony arrest warrant. Id. Malafa says he "corroborated" this by conducting a Department of Transportation check, which revealed that the defendant was subject to an arrest warrant for violating probation. Id. In paragraph 24, Malafa explained that he'd checked the Wisconsin Circuit Court Access Program and learned that the defendant had a felony conviction for manufacturing and delivering heroin, and that "[t]hese convictions" had not been reversed; that same search revealed to Malafa that the defendant was on active supervision with the Department of Corrections. Id. at 7.

Another paragraph relevant to the issue before the court is paragraph 23, which states that

> [t]he affiant believes that the informant is a credible person because the informant is giving law enforcement officer information directly corroborated by the knowledge and past experience of law enforcement officers. The informant further provides the description of the suspect [defendant] and positively identified [the defendant] through Milwaukee Police Department resources. The confidential informant provided detailed information of the criminal activity at [the defendant's] residence and the type of criminal offenses committed by [the defendant]. The informant has provided detailed

information against his penal interest during a criminal investigation. Further, the informant has provided detailed information in the past that has led to the execution of at least one hundred (100) search warrants, resulting in the recovery of a large amount of cocaine and marijuana, and at least one hundred (100) wanted subjects. The informant also has shown the affiant the locations of drug houses from which the affiant and other law enforcement officers have recovered and made arrests for narcotics possession offenses and firearms recoveries in the past.

Id. at 6-7.

Paragraph 34 is the last pertinent paragraph. Malafa stated that

[t]he affiant knows an individual by the name of [defendant/birthdate] is associated with the address of 2629 North 8th Street. [A]s the confidential informant has stated; That affiant knows that the presence of firearms in the residence presents a significant risk to the safety of the officers executing the search warrant, that it is common for more than one firearm to be located in a residence. Specifically, a secondary informant has seen [the defendant] armed with a firearm during drug transactions in the past thirty (30). Affiant knows this presents a significant risk to the safety of the officers executing the search warrant possibly allowing the occupants to arm themselves prior to law enforcement making entry. Affiant believes that the information presented in this affidavit forms the basis to request a no-knock warrant.

Id. at 8-9.

The remainder of the affidavit is boilerplate regarding Malafa's knowledge of how drug dealers use certain items and keep certain items in their homes. Id. at 7-9.

## IV.  The Pleadings

### A.  The Defendant's Motion (Dkt. No. 13)

#### 1.  *Arguments*

In his motion asking the court to schedule a Franks hearing, the defendant argued that the search Malafa mentioned in the affidavit—the search of the defendant's "prior residence" that allegedly took place within the

previous thirty days—had turned up "no incriminating materials linked to "the defendant," that police found *nothing* linked to the defendant and that a resident at the location had told police that the defendant didn't live there and had no property there and that she'd not seen him with drugs or a gun. Dkt. No. 13 at 1. The defendant asserted that this fact didn't appear in the North 8th Street affidavit, even though Malafa had signed both the affidavit for the prior warrant and the North 8th Street affidavit. Id. at 1-2. The defendant asserted that in the North 8th Street affidavit, Malafa "suggested that the first warrant had produced incriminating evidence pointing to [the defendant]," and that this "was false." Id. at 2.

The motion also asserted that the defendant "reasonably" believed that the same informant had provided information for both warrant affidavits, that this person was on state supervisions, that he'd been selling drugs, that he'd led police on a car chase, and that he'd possessed a firearm himself weeks before "fingering" the defendant. Id. at 2. The defendant argued that Malafa knew all this but didn't disclose it in the North 8th Street affidavit, and that Malafa used "legal boilerplate" to cover up the "sparse allegations" in the affidavit. Id. The defendant asserted that if the North 8th Street affidavit had been "complete and accurate," Commissioner Moore would not have issued the warrant. Id.

The defendant explained that "[t]hings began" with Individual A, who had been convicted of a drug offense in 2005, served nine years in state custody and currently was serving a seven-year term of extended supervision. Id. The defendant asserted that Individual A had been "in a relationship with [the defendant's] mother . . . for many years," but that Individual A remained married to another woman twenty years his senior. Id. at 2-3. The defendant

10

asserted—and provided police reports to prove—that in late May 2018, patrol officers saw what they thought was a drug deal taking place in a Walgreens parking lot; one of the participants was in a tan Nissan Murano. Id. at 3; Dkt. No. 13-2. The Nissan and its driver escaped; the police found drugs and paraphernalia in the other party's car. Id.

The defendant contended that the police determined the Nissan was owned by Individual A's wife; they spoke to her, and after initially lying, she admitted that she let a person with a name similar to Individual A's use her car, and let the police search it. Id. The officers found items with Individual A's name on them, bits of sandwich bags and traces of crack. Id. Individual A's wife then admitted that Individual A had been using the car, and once the officer identified Individual A, the other party to the drug transaction picked Individual A out of a lineup as someone from whom he'd been trying to buy crack at the Walgreens. Id.

The defendant asserted that the police had begun to surveil Individual A—they collected informant information, observed him using the tan Murano, saw evidence of drug sales and had a drug dog sniff, and alert on, his front door. Id. at 4. Officer Malafa—the same officer who prepared the North 8th Street affidavit—prepared an affidavit to search Individual A's home. Id.; Dkt. No. 13-3. In late June or early July 2018, officers executed the warrant and found a gun. Id.

The defendant explained that Individual A was arrested on July 2, 2018, id. at 4; Dkt. No. 13-2, and that Malafa interviewed him; during the interview, Individual A admitted driving the Murano and fleeing police in May but denied being involved in drug activity. Id.

The defendant posited that given all this, Individual A should have been charged with something—maybe several somethings—or at the very least, had his state supervision revoked. Id. Instead, the defendant asserted, Individual A was released "a few days later." Id. See also, Dkt. 13-4 (Department of Corrections offender detail, showing that Individual A was released from the Milwaukee Secure Detention Facility on July 10, 2018).

The defendant stated that on July 8, 2018—two days before Individual A was released from the MSDF—Malafa signed an affidavit in support of a search warrant for a residence at 3848 North 28th Street. Id.; Dkt. No. 13-5 at 9. In the affidavit, he explained that an informant had told him within the prior week that the defendant was "using" 3848 N. 28th Street to store and sell cocaine "while armed with a firearm," and that the informant had seen the defendant doing this. Id. at 4-5; Dkt. No. 13-5 at 5. Malafa said the informant had indicated that the defendant lived in and controlled the N. 28th Street address. Id. The informant also said that the defendant drove a black four door Chrysler Sebring, and Malafa said that he had seen that car parked directly in front of 2848 N. 28th Street in the forty-eight hours before signing the affidavit. Id. at 6.

The defendant asserted, however, that when the officers executed the warrant at 3848 N. 28th Street, they "found no sign" of the defendant. Id. They found five other individuals, some marijuana, some Ecstasy, some prescription drugs and sixteen bullets, but "no correspondence or property linked to [the defendant] at all." Id. The defendant also asserted that "one of the primary residents" at the North 28th Street address, Michella Bohannon, told the defendant's investigator that she had told one of the searching officers that she'd never seen the defendant with a firearm or dealing drugs, that he did not

12

live at 3848 N. 28th Street and that he never had. Id. She said she told police that the defendant had just kept some things at that residence "for a short time." Id. The defendant explained that Bohannon had told the investigator she'd gotten into a police car to show the police where she thought the defendant lived (with, she thought, his mother). Id. at 5-6.

The defendant characterized the search of the N. 28th Street address as a "bust," because it did not confirm the informant's claims that the defendant lived there or controlled the location. Id. at 6. The defendant asserted that the search undermined the informant's credibility. Id.

The defendant stated that Malafa had signed the affidavit for the North 8th Street address "42 days later." Id. at 6. He described this affidavit as "targeting" the defendant. Id. The defendant recounted everything Malafa had said in the North 8th Street affidavit. Id. at 6-7. He then argued that the North 8th Street affidavit was "false or misleading in several ways." Id. at 7. The defendant alleged that:

- The prior search warrant had been executed forty-two days earlier—not in the past thirty days as Malafa had stated in the affidavit.

- Officers found no evidence that the defendant ever had lived at 3848 N. 28th Street, but Malafa's affidavit referred to that address as the defendant's "prior residence."

- Officers did not find any evidence of drug trafficking at the North 28th Street address (such as plastic baggies, cutting agents, digital scales, security cameras or large quantities of cash), while Malafa's affidavit claimed that "indicia of narcotics trafficking and unlawful possession of firearms" were found at 28th Street.

- Malafa said he knew through past experience that the defendant was involved in trafficking heroin and cocaine base, but officers didn't find evidence of heroin, crack or powder cocaine at the North 28th Street address; Malafa's

report about the North 28th Street search says that an
informant told Malafa that the defendant was selling heroin,
crack and pills but in the North 28th Street affidavit, Malafa
mentioned only cocaine.

- The affidavit did not mention Bohannon's statements that
she had never seen the defendant with a gun or selling
drugs.

- Assuming that the informant who provided information for
the North 8th Street affidavit was Individual A, Malafa's
affidavit did not mention that the informant was on state
supervision, had recently committed new crimes, was
"apparently 'working off' new charges" and faced revocation
of his extended supervision.

- Assuming that the informant who provided information for
the North 28th Street affidavit also was Individual A, the
North 8th Street affidavit did not reveal that the search of
North 28th Street did not corroborate his claim that the
defendant lived there and controlled that residence.

Id. at 7-8.

The defendant argued that Malafa made one "outright false" statement in

the 8th Street affidavit—that the prior warrant had been executed within the

previous thirty days, when it actually had been executed forty-two days prior.

Id. at 11. He asserted that Malafa included misleading information in the North

8th Street affidavit, such as Malafa's assertion that he "knew" that the

defendant was involved in selling heroin and crack because of the prior search,

when the prior search didn't reveal evidence of heroin, crack or even powder

cocaine. Id. The defendant said that it was "deeply misleading" for Malafa to

say in the 8th Street affidavit that the prior search took place at the

defendant's prior "residence" when the prior search revealed no evidence that

the defendant lived there. Id. The defendant asserted that Malafa's statement

that officers found "indicia" of drug trafficking and unlawful possession of

firearms during the previous search was misleading, and that the evidence

found at 28th Street was more appropriately characterized as indicia of drug *possession*. Id. He also argued, based on his belief that Individual A was the informant who provided the information for both affidavits, that Malafa's representations about the informant's reliability and record painted a rosier picture than warranted. Id. at 12.

The defendant maintained that Malafa had reason to know he'd provided false or misleading information, because he signed the 28th Street affidavit, the 8th Street affidavit and the affidavit in support of the search of Individual A's residence, and that Malafa had detailed knowledge about Individual A. Id. at 12-13.

Finally, the defendant argued that the 28th Street affidavit did not provide probable cause to support a search, and that if the commissioner had ignored the boilerplate (much of which, he asserted, was wrong or inapplicable), the affidavit contained only one incriminating allegation—that the informant had seen the defendant with a gun at 8th Street. Id. at 13-14. The defendant argued that even that allegation was spare; there were no details about when the informant allegedly saw the gun, where in the house he/she saw it, what kind of gun it was. Id. at 14. He alleged that the informant didn't describe the 8th Street address and deduced from this that the informant never went inside. Id. He conceded that the informant knew about the defendant having access to the green Pontiac (which law enforcement confirmed) but noted that Malafa didn't say when Malafa saw the Pontiac at the address. Id. at 15. The defendant admitted that the informant knew about the defendant's probation warrant but argued that the affidavit didn't explain *how* the informant knew that. Id. The defendant referenced Malafa's account that another officer had described high foot traffic at 8th Street, but again pointed

out that Malafa provided no time frame. Id. In sum, the defendant asserted that the 8th Street affidavit provided very little in the way of probable cause for a search.

The defendant also acknowledged Malafa's assertion that the informant had assisted in procuring over 100 search warrants. Id. at 17. But he argued that the affidavit did not reveal the time frame for that assistance, and he assumed that "with such a long record, that informant must have given bad information many times, too." Id. He argued that the affidavit didn't mention how many unsuccessful tips the informant had provided. Id. at 17-18. The defendant concluded that "with the misleading information about the prior search warrant removed and corrected, and the omitted information added, the 8th Street affidavit doesn't establish probable cause." Id. at 18. And he asserted that if Individual A was the informant for both affidavits, "the case grows even weaker." Id.

    2.    *Evidence*

The defendant attached to his motion a document from the Department of Corrections showing that Individual A was on supervision, dkt. no. 13-1; police reports regarding the incident in the Walgreens parking lot in May 2018, describing Individual A's involvement in a suspected drug deal and car chase, dkt. no. 13-2; Malafa's June 2018 affidavit in support of the search warrant for Individual A's home, dkt. no. 13-3; a Department of Corrections document showing the timing of Individual A's release from custody after the May car chase and June search warrant, dkt. no. 13-4; Malafa's July 2018 affidavit in support of the search warrant for 3848 North 28th Street, dkt. no. 13-5; a July 10, 2018 police report authored by Malafa, describing the search of the 28th Street residence, dkt. no. 13-6; a December 3, 2018 affidavit from Federal

Defender investigator Bill Gowin, in which he describes the statements made to him by Michella Bohannon, dkt. no. 13-7; and Malafa's August 21, 2018 affidavit in support of the search warrant for the 8th Street address, dkt. no. 13-8.

a. The 28th Street Affidavit Compared to the 8th Street affidavit

The affidavit Malafa signed on July 8, 2018, in support of the warrant to search the 28th Street address, is quite like the affidavit he signed in August in support of the warrant to search the defendant's 8th Street residence. The first five paragraphs are identical to the first five paragraphs of the August affidavit. Compare Dkt. No. 13-5 at 3 with Dkt. No. 13-8 at 3. Both affidavits have a section titled "THE CONFIDENTIAL INFORMANT." Compare Dkt. No. 13-5 at 4-5 with Dkt. No. 13-8 at 4-5. Each of the "confidential informant" sections contains seven paragraphs. The first paragraph of each is identical, except for the address; each reads, "That affiant's application for a search warrant is based, in part, upon information which affiant received from a confidential informant (who is a subject who gave a statement against their own penal interest) regarding drug activity at the location of [address to be searched]." Compare Dkt. No. 13-5 at 4, ¶1 with Dkt. No. 13-8 at 4, ¶8. The remaining six paragraphs, all discussing why Malafa believes the informant is credible, are identical. Compare Dkt. No. 13-5 at 4-5, ¶¶2-7 with Dkt. No. 13-8 at 4-5, ¶¶9-14.

The affidavits diverge somewhat in the text under the heading "PROBABLE CAUSE & INVESTIGATION." The July, 28th Street affidavit asserts that the 28th Street residence was "being used" by the defendant, "a convicted felon, to store and distribute quantities of cocaine while armed with a firearm in a residence he lives in and controls," dkt. no. 13-5 at 5, ¶1, while the

August, 8th Street affidavit asserts that the residence "is being used by [the defendant], a convicted felon, to store a firearm in a residence he lives in and controls," Dkt. No. 13-8 at 6, ¶15.

The 28th Street affidavit asserts that Malafa was informed by a reliable informant that within the past seven days, the informant had observed the defendant delivering cocaine inside the 28th Street residence while armed with a gun. Dkt. No. 13-5 at 5, ¶2. It says that within the past seven days the informant had seen "an amount of cocaine," and "transactions conducted by [the defendant] in which an individual exchanged a sum of U.S. Currency for a quantity of cocaine, which was provided by [the defendant]." Id. The affidavit indicates that the informant demonstrated to Malafa that he/she was familiar with cocaine, its appearance, and its packaging for personal use and retail; it stated that the informant had told Malafa that the defendant "arms himself with the firearm inside his residence and uses it to protect them from other armed drug dealers that reside in the area." Id.

The June, 28th Street affidavit, however, contains the identical paragraph contained in the August, 8th Street affidavit, asserting Malafa's confidence that the informant is knowledgeable about weapons, and that Malafa had confirmed through interrogation that the informant knew firearms basics, the differences between firearms, how to handle firearms and why firearms are used by criminals. Compare Dkt. No. 13-5 at 6, ¶3 with Dkt. No. 13-8 at 6, ¶17.

The affidavits also are identical in significant portions of the paragraph in which Malafa explains why he believes the informant to be credible. Both affidavits include a paragraph with the following language:

> The affiant believes that the informant is a credible person because the informant is giving law enforcement officer information directly

corroborated by the knowledge and past experience of law enforcement officers. The informant further provides the description of the suspect [defendant] and positively identified [the defendant] through Milwaukee Police Department resources. The confidential informant provided detailed information of the criminal activity at [the defendant's] residence and the type of criminal offenses committed by [the defendant]. The informant has provided detailed information against his penal interest during a criminal investigation.

Compare Dkt. No. 13-5 at 6, ¶4 with Dkt. No. 13-8 at 6-7, ¶23. But the next sentence in the June, 28th Street affidavit reads, "Further, the informant has provided detailed information in the past that has led to the execution of at least two (2) search warrants, resulting in the recovery of a large amount of cocaine and marijuana," dkt. no. 13-5 at 6, ¶4, while the August, 8th Street affidavit's next sentence reads, "Further, the informant has provided detailed information in the past that has led to the execution of at least one hundred (100) search warrants, resulting in the recovery of a large amount of cocaine and marijuana, and at least one hundred (100) wanted subjects," dkt. no. 13-8 at 7, ¶23. The last sentence of both paragraphs is identical, stating that the information "also has shown the affiant the locations of drug houses from which the affiant and other law enforcement officers have recovered and made arrests for narcotics possession offenses and firearms recoveries in the past." Id.

The 28th Street affidavit explains that the informant told Malafa that the defendant recently had bought and operated a black, four-door Chrysler Sebring that didn't have a front registration plate, and Malafa stated that he had personally observed that car parked in front of the 28th Street address in the last twenty-four hours. Dkt. No. 13-5 at 6, ¶6.

While both affidavits indicate that Malafa had confirmed through the Wisconsin Circuit Court Access Program that the defendant had a felony

conviction in Milwaukee County for manufacture/deliver heroin (greater than three grams), a class I felony, and that the defendant was prohibited from possessing firearms as a result, the 28th Street affidavit indicated that the defendant was on active community supervision with an address of 2007 West Clarke Street, dkt. no. 13-5 at ¶8, while the 8th Street affidavit indicated that the defendant was on active community supervision "and has a valid felony Violation of Probation warrant . . . ," dkt. no. 13-8 at 7, ¶24.

Both affidavits include eight, identical paragraphs under the heading "NEXUS," in which Malafa recounts what he has learned about drugs, drug dealers and guns as a result of his training and experience. Compare Dkt. No. 13-5 at 6-8, ¶¶1-8 with Dkt. No. 13-8 at 7-8, ¶¶26-33. Both affidavits contain a paragraph that begins with the following language:

> The affiant knows an individual by the name of [defendant] is associated with the address of [address to be searched]. As the confidential informant has stated; That affiant knows that the presence of firearms in the residence presents a significant risk to the safety of the officers executing the search warrant, that it is common for more than one firearm to be located in a residence.

Compare Dkt. No. 13-5 at 8, ¶11 with Dkt. No. 13-8 at 8-9, ¶34. But the next sentence in the 28th Street affidavit reads, "Specifically, the informant has seen [the defendant] armed with a firearm during drug transactions," dkt. no. 13-5 at 8, ¶11, while the 8th Street affidavit's next sentence reads, "Specifically, a secondary informant has seen [the defendant] armed with a firearm during drug transactions in the past thirty (30)," dkt. no. 13-8 at 9, ¶34.

b.     The Police Report Regarding the Search of the 28th Street Residence

Malafa authored a report on July 10, 2018, describing the events surrounding the search of the 28th Street residence. Dkt. No. 13-6. That report

indicated that the previous week, Malafa had spoken with an informant who had identified the defendant as a felon on probation for narcotics delivery, that the informant had seen the defendant with a semi-automatic-style firearm on his person at all time and that the defendant was currently selling what the informant believed to be "heroin, 'crack' cocaine base and pills." Id. at 3. Malafa related the informant's description of the black, Chrysler Sebring, indicating that the informant had described it as "an approximate 2010" model "with no registration plates." Id. Malafa said that he'd showed the informant the 28th Street address, and that the informant had identified it as "the location where [the defendant] was located." Id. Malafa said that he used "Milwaukee Police Department resources" to "identify a possible identity of [the defendant]," and that he showed the informant a photo of the defendant and the informant confirmed the defendant's identity. Id.

After describing the layout of the 28th Street residence, Malafa listed the people who were in the residence at the time of the search. Id. at 4. Kenneth M. Spruell was in the living room, along with Michaella Bohannon. Id. Someone with the initials AJ, whose name is redacted, was in the kitchen. Cametta S. Spruell was in the second bedroom, and Lazarus Burns was in the upper stairwell "nearest the kitchen." Id. Malafa reported that in the basement along the west wall, an officer Wawrzyniakowski had found a black Glock gun case containing a cleaning kit, "with magazines and grips." Id. In the upstairs bedroom, task force officer Kirk found a letter addressed to Lazarus Burns; Detective Dodd found a black shoulder holster with two semi-automatic firearm magazines containing sixteen unfired Luger cartridges. Id. In the second bedroom (which Malafa identified as "BOHANNONS Bedroom"), Officer Hudson found a clear plastic baggie containing marijuana. Id. Hudson also found a

brown, unlabeled prescription bottle with "57 circular blue prescription pills," identified on Drugs.com as Clonazepam 1mg and a clear plastic baggie with twenty-one circular prescription pills verified on Drugs.com as Ecstasy. Id. at 5.

Malafa reported that a Department of Transportation check revealed that "Spruell"—presumably Kenneth—had a probation violation warrant. Id. Both Lazarus Burns and Kenneth Spruell were taken to the police station, and Malafa concluded by stating that the case would be referred to the Milwaukee County DA's office for charging. Id. Malafa prepared another report, indicating that he'd presented the case to the DA for prosecution on July 11, 2018, but that the prosecutor had deferred prosecution. Id. at 7.

c.    Investigator Gowin's Affidavit

Investigator Gowin's affidavit attested that he had met with "Michella Bohannon at her home located at 3848 N. 28th Street" on November 19, 2018. Dkt. No. 13-7 at 1. According to Gowin, Bohannon said that on July 10, 2018—the date the 28th Street warrant was executed—Bohannon "was interviewed by one particular male police officer." Id. at 2. Bohannon said that the officer asked her if she knew the defendant, if the defendant lived "at her residence," when she'd last seen the defendant and if she'd seen the defendant with cocaine, heroin or guns. Id. The affidavit then states that

> Ms. Bohannon told this police officer the following: she has known [the defendant] practically his whole life because he is her nephew, Kenneth Spruell's cousin. [The defendant] has never lived at Ms. Bohannon's house. [The defendant] visits Kenneth Spruell at Ms. Bohannon's house but he doesn't sleep at her house. [The defendant] stored some of his belongings at Ms. Bohannon's house for about one week but he moved his belongings out in early July 2018, which was the last time she saw him. [The defendant] did not live at Ms. Bohannon's house during the week that he stored his belongings at her house. Ms. Bohannon has never seen [the defendant] with cocaine, heroin or guns at any time. Ms. Bohannon

22

only knew that [the defendant] had an addiction to Percocet pain pills. None of the pills found in Ms. Bohannon's house belonged to [the defendant].

The same police officer asked Ms. Bohannon if she knew where [the defendant] lived and she told the officer she believed [the defendant] lived with his mother, Aretha Johnson. This officer put Ms. Bohannon in his vehicle and she directed him to Aretha Johnson's residence, just about a five minute drive from Ms. Bohannon's house.

Id. at 2-3.

In a footnote in his brief in support of his request for the Franks hearing, the defendant indicates that Bohannon gave this statement to Investigator Gowin on November 19, 2018. Dkt. No. 13 at 6 n.3. The defendant says that Gowin then tried to have Bohannon sign her own affidavit, but that "Bohannon's mother, however, has subsequently prevented the defense investigator from speaking with Ms. Bohannon, out of an apparent fear of drawing police attention." Id.

B.      The Government's Opposition (Dkt. No. 15)

The government began by asserting that it was "willing to confirm that the CI for the First Warrant, executed at 3848 North 28th Street, and the CI for Second Warrant, executed at 2629 North 8th Street, are two different individuals." Dkt. No. 15 at 5. The government argued that due to a 2010 felony conviction, the defendant was prohibited from possessing a gun. Id. at 6. It stated that in July 2018, an informant "who provided police with information leading to at least two search warrants" told the police that he/she had seen the defendant delivering cocaine while armed at the North 28th Street address. Id. The government asserted that "[b]ased on that, and other information, the police obtained a warrant." Id. The government said that on executing the warrant, the police "found evidence of drug trafficking and possession of

23

firearms," but did not "locate" the defendant. Id. The government recounted that "[o]ne month later, a different CI, one who had provided police with information leading to at least 100 search warrants, told police" that he/she had seen the defendant in possession of a gun at the North 8th Street address. Id. It said that "[t]he police, namely Officer Ndiva Malafa," corroborated that information by confirming the defendant's presence at North 8th Street and his access to the car the informant had described. Id. The government said that Malafa wrote the affidavit, the state judge issued the warrant and police executed it and found the evidence that gave rise to the federal charges. Id. at 6-7.

The government summarized its opposition to the defendant's motion this way:

> Officer Malafa's affidavit in support of the Second Warrant mentions his prior knowledge of [the defendant's] drug dealing and the prior search warrant, but these details, which are confined to one paragraph, are not the facts that form the primary basis for the warrant. Instead, the warrant relies primarily on the information provided by a prolifically reliable CI and the corroboration of that information by Officer Malafa. Nothing in Officer Malafa's affidavit is materially false or misleading. [The defendant] has not come forward with any evidence showing that Officer Malafa intentionally or recklessly lied or omitted information to mislead the magistrate into issuing the warrant. Moreover, even if this Court were to accept [the defendant's] allegations to the contrary, probable cause existed for the search even if the purportedly problematic paragraphs are removed. [The defendant] cannot, therefore, meet the substantial burden required to justify a *Franks* hearing, and his request should be denied.

Id. at 7.

According to the government, the defendant's motion was based, not on evidence, but on "two baseless and false conjectures"—that Individual A was the informant who supplied the information in the North 8th Street affidavit, id. at 8, and that Individual A was the informant for both warrants, id. at 9. As

to the first assumption—that Individual A was the informant for the North 8th
Street warrant—the government argued that, "[t]aking that assumption as
fact," the defendant's assertion that Malafa did not reveal the informant's
motivations and criminal activity was not true. Id. at 8-9. The government
asserted that on several occasions in the affidavit, Malafa had acknowledged
that the informant faced "personal criminal liability," by asserting that the
informant had given statements against his/her own penal interest or
describing the informant's involvement in criminal activity. Id. at 9.

As for the defendant's assumption that Individual A was the informant
for both affidavits, the government asserted that "[t]he falsity of that
assumption is . . . patently evidence on the face of the two warrants, which
clearly describe the CIs differently." Id. The government pointed out that the
North 28th Street affidavit described an informant who had provided
information that led to the execution of at least *two* warrants, while the North
8th Street affidavit identified an informant who had provided information
leading to the execution of at least *100* warrants. Id. The government asserted
that the North 28th Street affidavit described an informant who had recounted
*observations* about the defendant, while the North 8th Street affidavit described
someone who'd had *personal interaction* with the defendant. Id. The
government contended that because the informant who provided information
for the first warrant was different from the one who provided information for
the second warrant, the defendant's argument that Malafa didn't reveal that
the second informant had provided "inaccurate" information lacked merit. Id.
at 10.

The government conceded that Malafa made one misstatement in the
North 8th Street affidavit, by stating that the first warrant had been executed

within the past thirty days when the warrant actually had been executed forty-two days prior. Id. at 10. The government asserted, however, that the twelve-day difference was immaterial, and not the kind of deliberate falsehood that warranted a Franks hearing. Id. As to the paragraph in which Malafa stated that he knew from past experience that the defendant was involved in trafficking heroin and cocaine base, then described the execution of the prior search warrant as having produced "indicia of narcotics trafficking and unlawful possession of firearms," the government argued that the defendant's assertion that the search showed that the defendant hadn't lived at the North 28th Street address was not true, and that the affidavit stated probable cause even without that paragraph. Id. at 11.

Regarding probable cause, the government argued that the North 8th Street affidavit "used a reliable and tested CI who had provided information leading to over 100 search warrants and the recovery of at least 100 wanted individuals." Id. at 11-12. In a footnote, the government asserted that although it wasn't stated in the "warrant because it was not required, this CI has been working with MPD for at least two years with multiple MPD officers," and that the officer who had been working with the informant for the past nine months "has indicated that nearly all of the information provided over that time period has proven to be accurate and has led to the execution of successful search warrants." Id. at 12 n.2. The government maintained that the affidavit showed the informant had provided information about seeing the defendant with a gun in the previous seven days at the North 8th Street address, and about the defendant operating the green Pontiac Grand Prix. Id. The government reiterated that Malafa personally had observed the defendant at the address, had personally observed him "accessing" the green Pontiac at that address and

26

had personally see the green Pontiac at the address "within 48 hours of the affidavit. Id. The government asserted that those facts, "alone, were sufficient for a finding of probable cause that [the defendant], who is a felon prohibited from possessing a firearm, could be found at the 8th Street address in possession of a firearm." Id.

In the alternative, the government argued that if the court found that paragraph 18—the paragraph in which Malafa asserted that he knew that the defendant trafficked in heroin and cocaine, then referenced the search at the defendant's "prior residence" which resulted in indicia of drug trafficking and unlawful firearm possession—was necessary to prove probable cause, Malafa's assertions weren't false or recklessly misleading. Id. at 13-14. The government asserted that Gowin's affidavit about what Bohannon told him was uncorroborated, and that Bohannon's statements were hearsay. Id. at 14. The government said that the "investigator claims that Bohannon, who is [the defendant's] aunt," said that the defendant hadn't lived at the 28th Street address, and that Bohannon hadn't seen the defendant with cocaine, heroin or guns; the government maintained that such "biased evidence" was not reliable enough to warrant a Franks hearing. Id. The government also contended that the defendant was "currently on state supervision for heroin distribution," arguing that Bohannon thus would have known that the defendant "has been involved with heroin in the past" and that Malafa thus would have knowledge of the defendant's involvement with heroin. Id. The government also stated that "Officer Malafa has documentary evidence indicating that Bohannon's purported statements to the investigator are false," and said it was submitting that evidence to the court for *in camera* review. Id.

As to Malafa's assertion that the North 28th Street search revealed indicia of drug trafficking and unlawful firearm possession, the government argued that those statements were not misleading. Id. The government stated that the police reports the defendant himself submitted showed that the police who searched the North 28th Street address found "a gun case, holster, magazines and bullets in a house with various controlled substances." Id. at 14-15. The government asserted that the quantities of drugs found were "substantial," and that it was "reasonable to infer that the possession of firearms in connection with those substances would be unlawful." Id. at 15. The government also asserted that the case (the evidence found at the North 28th Street address) "was presented to the ADA, thus belying [the defendant's] implication that the warrant execution revealed no evidence of serious criminal activity." Id.

The government also disputed the defendant's characterization that the North 28th Street search did not reveal any connections to the defendant. The government first pointed out that Malafa's affidavit didn't attribute the drugs found there to the defendant. Id. The government says that by *not* asserting that the drugs and other items found were the defendant's, "Officer Malafa implicitly communicated to the judge that police had not explicitly connected [the defendant] to the criminal activity found there." Id. The government surmised that it was "improbable that the magistrate examining [the affidavit] would have assumed [the defendant's ownership of the items found at North 28th Street], especially because such an assumption would have been inconsistent with the request for a second search warrant." Id.

Finally, the government contended that Malafa's assertion that he knew the defendant to be involved in heroin and crack trafficking was not false,

because (a) the defendant had prior convictions for distributing controlled substances, including heroin, and (b) the materials the government submitted to the court for *in camera* review showed that others had told Malafa that the defendant had been involved in drug dealing after his release from prison. Id. at 16. The government also said that two different informants had "provided similar information" to Malafa. Id. It asserted that Malafa was entitled to "rely on this information in the affidavit." Id.

C.    The Defendants' Reply Brief (Dkt. No. 28)

The defendant replied that at the time Malafa signed the North 8th Street affidavit, he knew that the North 28th Street warrant hadn't been executed in the past thirty days, knew that the 28th Street warrant "hadn't targeted [the defendant's] residence" and knew that the officers who searched hadn't found any drugs or guns linked to the defendant. Dkt. No. 28 at 1. He insisted that Malafa knew that the North 28th Street search had not resulted in criminal charges and that the officers hadn't found heroin, crack or cocaine. Id. But, he asserted, Malafa did not put any of that in the affidavit, and instead "used the 28th Street search to justify the warrant here, suggesting that because of the prior search of [the defendant's] 'residence' he 'knew' that [the defendant] was selling heroin and crack." Id.

The defendant went on to argue the following:

Officer Malafa also knew that the informant cited in his affidavit had provided information leading to just three recent search warrants, and that the informant had given him inaccurate information. Yet he failed to mention this. What's more, assuming that this informant was [Individual A] (which the government has refused to deny and which the defense reasonably believes), Officer Malafa knew that [Individual A] had concealed his own crimes from the police—lying to Officer Malafa's face, just the month before. So far from making a statement against his "penal interest," [Individual A] made a laughable exculpatory statement. Officer Malafa also knew that [Individual A] hadn't simply confessed to one small crime,

rather he'd been caught dealing drugs, illegally possessing firearms, and leading police on a car chase, in addition to obstructing justice by lying, all on state supervision. So the officer knew that [Individual A] was desperate to help himself any way he could, and had a significant reason to lie. And he knew that [Individual A] was dating [the defendant's] mother, and that [Individual A] appeared to be a rival drug dealer. Again, none of this was disclosed in the officer's affidavit.

Id. at 1-2.

Much of the rest of the defendant's reply brief is a restatement of the arguments in his motion. He noted, however, that the government had submitted evidence to the court for *in camera* review and that the court had refused to consider it. Id. at 4 n.1. He asserted that this was proper under the law. Id. He also asserted that because the government had indicated that the informant who provided information for the 28th Street affidavit had begun working with the police in 2007, "much of the informant's track record could be old, possibly very old." Id. at 5. He also asserted that the government's statement that "nearly" all the informant's tips from March through December 2018 were accurate meant that some of them weren't, and that Malafa hadn't disclosed that. Id. The defendant argued that the 8th Street affidavit hadn't disclosed how many times the informant had given inaccurate information, whether he/she ever had lied to police, whether he/she had committed crimes while cooperating, whether he/she had been paid for the information, and surmised that given the informant's long history of cooperation, "all four things are likely true." Id. at 5-6.

The defendant persisted in his assertions that Individual A had "informed on" the defendant and indicated that the defendant's investigator had testified under oath at the January 18, 2019 hearing on the motion to compel that Individual A's own girlfriend believed he was "the informant." Id. at 6. He noted

30

that the government had not denied that Individual A was "the informant." <u>Id.</u>
The defendant then reiterated his arguments about Individual A's lack of
reliability and credibility. <u>Id.</u> at 6-8. The defendant also speculated, given that
Individual A had been dating the defendant's mother "for years," that "[l]ike in
many stepfather relationships, animosity may have built up." <u>Id.</u> at 8. The
defendant also asserted that Individual A was a drug dealer, "and thus was a
professional rival to [the defendant]." <u>Id.</u> He argued that Malafa didn't disclose
any of this in the affidavit. <u>Id.</u>

The defendant asserted that Malafa had made one other demonstrably
false statement in the North 8th Street affidavit. <u>Id.</u> at 8-9. He stated that at
the end of the affidavit, Malafa had alleged that a "secondary informant" had
seen the defendant armed with a gun during drug transactions in "the past
thirty (30)." <u>Id.</u> at 8 (citing Dkt. No. 13-8 at 9). The defendant assumed that
Malafa meant the "past thirty (30) *days*," and assumed that Malafa's reference
to a "secondary informant" was a reference to the 28th Street informant. <u>Id.</u> at
8-9. The defendant argued that the 28th Street informant had told Malafa that
he'd seen the defendant with a gun up to seven days before July 8, 2018, but
that the 8th Street affidavit was signed on August 21, 2018—forty-four days
later. <u>Id.</u> at 9. Again, the defendant argued, Malafa had made a false statement
that something had happened in the past thirty days when it hadn't. <u>Id.</u>

The defendant devoted the rest of the reply brief to arguing that without
the allegedly false or misleading statements, the affidavit did not state probable
cause. <u>Id.</u> at 9-16.

D.    <u>The Government's Response to Judge Jones's Order to Compel
      (Dkt. No. 28-1)</u>

On March 12, 2019, the prosecutor sent defense counsel a letter,
providing the information Judge Jones had ordered it to disclose in his ruling

on the motion to compel. Dkt. No. 28-1. The letter informed defense counsel that the informant for the 8th Street warrant began working with law enforcement in 2007, and that between March 13, 2018 and August 21, 2018, that informant had provided information that led to the execution of three successful warrants. Id.

## V.    Judge Jones's Order Granting the Motion for a <u>Franks</u> Hearing (Dkt. No. 29)

After laying out the facts and procedural history, Judge Jones began his analysis by noting that a defendant is entitled to a <u>Franks</u> hearing only when he makes a "'substantial preliminary showing that: (1) the affidavit contained a material false statement; (2) the affiant made the false statement intentionally, or with reckless disregard for the truth; and (3) the false statement was necessary to support the finding of probable cause.'" Dkt. No. 29 at 6 (quoting <u>United States v. Maro</u>, 272 F.3d 817, 821 (7th Cir. 2001)). He properly noted that the issue is not whether the affidavit contained a false statement but whether the affiant knew or should have known the statement was false. Id. (citing <u>United States v. Schultz</u>, 586 F.3d 526, 531 (7th Cir. 2009)). Judge Jones stated that the defendant "'must offer evidence showing either that the warrant affiant lied or that the warrant affiant recklessly disregarded the truth because he "in fact entertained serious doubts as to the truth of his allegations" or had "obvious reasons to doubt the veracity of the allegations."'" Id. at 7 (quoting <u>United States v. Jones</u>, 208 F.3d 603, 607 (7th Cir. 2000)). He explained that this was a substantial burden for the defendant to meet, and that the defendant had to make more than conclusory allegations and had to support them with an offer of proof. Id. (quoting <u>Franks</u>, 438 U.S. at 171). He also discussed the fact that the defendant was required to show that if deliberately false statements had been omitted, or deliberately omitted

32

information had been included, the affidavit would not have shown probable cause. Id. (quoting United States v. McMurtrey, 704 F.3d 502, 509 (7th Cir. 2013)). Judge Jones conceded that for these reasons, "'*Franks* hearings are rarely required.'" Id. (quoting United States v. Johnson, 580 F.3d 666, 670 (7th Cir. 2009)).

Judge Jones found that the defendant had made a "substantial preliminary showing that the 8th Street affidavit contains false or misleading statements and omissions." Dkt. No. 29 at 9. First, he pointed to the fact that the affidavit "falsely claimed" in Paragraph 18 that the 28th Street warrant was executed in the past thirty days. Id. Second, he found that the affidavit was misleading when it said that the 28th Street warrant was executed at the defendant's "prior residence." Id. at 10. Judge Jones reasoned that the officers found no personal identifiers linking the defendant to the 28th Street residence and that one of the residents said the defendant never lived there. Id. Third, Judge Jones found that paragraph 18 was misleading because it "appears to link the claim of ongoing drug dealing" by the defendant to the evidence recovered from the 28th Street search. Id. He concluded that the affidavit provided no support for Malafa's claim that he knew the defendant was trafficking heroin and cocaine at the time Malafa applied for the warrant. Id. at 11. Finally, Judge Jones held that the affidavit was misleading when it claimed that indicia of narcotics trafficking and unlawful possession of firearms were located during the 28th Street search. Id. He cited the fact that the officers found no evidence of drug distribution at the 28th Street residence (no scales, packaging materials, large amounts of cash) and no firearms. Id. He also opined that, contrary to the government's assertion, the amounts of drugs found at the 28th Street residence were not "substantial." Id. He found the

reference to indicia of "unlawful possession of firearms" equally misleading, noting that while officers had found ammunition, magazines, a holster and an empty case at the 28th Street address, they'd found no guns. Id.

In addition to finding that the affidavit contained false and misleading statements, Judge Jones also concluded that that affidavit omitted material information about the informant. Id. at 12. While Judge Jones agreed with the government that the defendant's belief that the informant was Individual A was based on conjecture and assumptions, he characterized it as "unfair" of the government to criticize the defendant for speculating about the informant's identity while refusing to disclose that identity. Id. at 12-13. Judge Jones said, "[w]ithout knowing additional details about the informant, the Court is not in a position to say whether the affidavit misled the issuing judge into believing that the informant was credible or whether the affidavit omitted key details about the informant's credibility." Id. at 13.

Judge Jones also found that the defendant made a substantial preliminary showing that Malafa recklessly disregarded the truth in the 8th Street affidavit. Id. He pointed out that Malafa was the author of both the 28th Street and 8th Street warrant and had participated in both searches, so he would have known when the 28th Street search took place and what the officers recovered there. Id. Judge Jones noted that Malafa had worked with both informants and had been the lead investigator in the case against Individual A, and concluded that "[t]hese facts constitute inferential evidence that Officer Malafa had 'obvious reasons' to doubt the veracity of his allegations." Id.

Finally, Judge Jones concluded that the affidavit was more misleading than false, requiring him to reconsider the affidavit after incorporating the

misleading omissions. Id. at 13-14 (citing McMurtrey, 704 F.3d at 509). (Judge Jones opined that the one false statement in the 8th Street affidavit—the fact that the 28th Street searched occurred within the past thirty days, rather than the past forty-five days, was "clearly immaterial." Id. at n.1.) He found that with a "more complete depiction of the 28th Street search, the case for probable cause is thin, consisting of the informant's statement that [the defendant] had a firearm inside his 8th Street residence." Id.

As to the level of detail the informant provided, Judge Jones recounted that the informant had described the defendant, indicated that he lived at the North 8th Street address, provided that he drove the green Pontiac Grand Prix and reported that he had a felony arrest warrant. Id. The informant also had said that he/she saw the defendant with a firearm inside the North 8th Street residence within the past week and that the defendant armed himself inside the residence for protection from other drug dealers. Id. Judge Jones characterized this information as "rather minimal" and leaving "much to be desired" in terms of detail. Id. He noted that the affidavit did not say how the informant came to be at the 8th Street residence, where the informant was when he/she saw the gun, the type of gun or where the defendant kept the gun. Id. at 14-15. Judge Jones decided that this factor weighed in favor of the defendant's argument that with the omitted information included, the informant's credibility/reliability was questionable. Id. at 15.

Regarding the extent of the informant's first-hand observation, Judge Jones found that this factor weighed in favor of the informant's credibility, because the informant had observed the defendant with the gun. Id.

As to the degree of corroboration for the informant's information, Judge Jones concluded that the information was only "minimally corroborated." Id.

He recounted that Malafa had seen the green Pontiac outside the North 8th Street residence within the forty-eight hours before he applied for the warrant. Id. But he noted that while Malafa had claimed to have observed the defendant at the residence, Malafa didn't say *when* he'd seen the defendant there. Id. He stated that while Malafa had confirmed the informant's statement that there was a warrant out for the defendant, it turned out that the warrant was for a probation violation, "not a felony," as the informant had said. Id. He noted that Malafa had confirmed that the defendant had a felony heroin-trafficking conviction. Id. at 15-16. But Judge Jones concluded that Malafa had corroborated "only minor facts and legal conduct" (citing United States v. Glover, 755 F.3d 811, 817 (7th Cir. 2011)). He found that this factor weighed "infinitesimally in favor of the informant's credibility, if at all." Id. at 16.

In terms of the time interval between the date the informant observed the defendant with the gun and the date of the affidavit, Judge Jones found that this factor weighed in favor of the informant's credibility, because the informant had observed the firearm within the past seven days. Id.

Regarding the informant's personal appearance before the court commissioner, Judge Judge found that factor to be neutral, because the informant did not appear before Commissioner Moore. Id.

Judge Jones then turned to the fact that the government relied "heavily on the informant's lengthy track record of providing reliable information." Id. While conceding that an informant's record of providing useful information was, according to the Seventh Circuit, "strong evidence" of reliability, citing United States v. Taylor, 471 F.3d 832, 840 (7th Cir. 2006), and admitting that the informant's track record here was "unusually impressive," Judge Jones found that the affidavit omitted "highly relevant information that could

undermine the informant's credibility." Id. at 16-17. He noted that the affidavit didn't say when the informant had started working with law enforcement; Judge Jones learned that information when he partially granted the defendant's motion to compel. Id. at 17 n.3. He said that the affidavit didn't disclose whether the informant ever had provided "bad information to law enforcement, whether the informant had a criminal record, whether the informant had committed crimes while cooperating with law enforcement, or whether the informant was being paid for his/her information." Id. at 17-18.

Judge Jones also noted that Malafa did not explain in the affidavit what Malafa meant by "reliable information." Id. at 18. He observed that in the case of the 28th Street affidavit, the informant's information had "proved to be incorrect," but that the police had recovered contraband from that location, and he questioned whether that kind of situation might have been included in the over 100 search warrants attributed to the 8th Street informant. Id.

Judge Jones found that the affidavit didn't provide the informant's motive for providing information. Id. While the government responded that the affidavit stated that the informant had given statements against his/her penal interest, based on his/her personal involvement in criminal activity, Judge Jones found that "those boilerplate paragraphs appear to have been mistakenly included in the 8th Street affidavit," because the identical paragraphs appeared in the 28th Street affidavit and the affidavit in support of the warrant to search Individual A's residence. Id.

Judge Jones clarified that it was common, and permissible, to use boilerplate language in affidavits in support of search warrants, but concluded that that particular boilerplate language clearly did not apply to the 8th Street affidavit, because the informant hadn't provided any information about drug

activity at the 8th Street address (as referenced in paragraph 8) or admitted to purchasing drugs from the defendant or implicated him/herself in the possession of the firearm (as referenced in paragraph 13). Id. at 18-19. Judge Jones rejected the government's reliance on those paragraphs to show the 8th Street informant's motive. Id.

While admitting that the omission of adverse credibility information wasn't necessarily fatal to a detailed, extensively corroborated affidavit, Judge Jones found that the 8th Street affidavit was neither detailed nor extensively corroborated. Id. at 19. He concluded that the informant's extensive track record, that "may not be as impressive as it appears," didn't make up for other credibility deficiencies. Id.

Judge Jones then addressed the defendant's speculation that Individual A might be the 8th Street informant, and stated that it was "reasonable to believe that [Individual A], an apparent drug dealer himself who was dating [the defendant's] mother, had a vendetta against [the defendant]." Id. at 20. That led Judge Jones to conclude that probable cause "likely would not exist if [Individual A] was the informant and his adverse credibility information had been included." Id.

In concluding his discussion of probable cause, Judge Jones wrote:

> The information provided by the 8th Street informant was recent and based on firsthand observation, but it lacked detail and corroboration: the affidavit also omitted crucial facts that would tend to undermine the informant's credibility. Considering the totality of the circumstances, the Court finds that [the defendant] has sufficiently demonstrated (albeit barely) that, had the misleading omissions been included, the 8th Street affidavit would not have established probable cause.

Id. at 20.

Judge Jones granted the motion to hold a <u>Franks</u> hearing but ordered that the "testimony at the hearing will be strictly narrowed to ensure that the informant's identity is not revealed." <u>Id.</u> at 20.

## VI. The Government's Objections (Dkt. No. 32) and the Defendant's Responses (Dkt. No. 36)

### A. The Government's Objections (Dkt. No. 32)

The government first objects that in concluding the 8th Street affidavit was misleading, Judge Jones did not apply the presumption that the warrant was valid, and that he did not focus on Malafa's state of mind, instead viewing the facts in the light most favorable to the defendant. Dkt. No. 32 at 7-8. The government argues that Judge Jones improperly relied on the hearsay statements in Gowin's affidavit. <u>Id.</u> at 8-10. The government asserts that viewing the evidence in the light most favorable to the defendant caused Judge Jones to make several factual errors, including:

- Judge Jones wrote that the search of the 28th Street residence "turned up dry with respect to Mr. Cloyd," and that the "officers did not find any evidence linking [the defendant] to that residence." <u>Id.</u> at 10. The government asserts that in making this conclusion, Judge Jones ignored the defendant's own evidence, Gowin's affidavit, in which Gowin averred that that the defendant's "aunt" and cousin lived at 28th Street and that Ms. Bohannon claimed to have told the police that in early July 2018, the defendant had moved out the belongings he had stored there for a week. <u>Id.</u> at 11. The government asserts that Judge Jones didn't consider the fact that Bohannon was the defendant's aunt, that she might have had some incentive to protect the defendant by telling police he'd never lived there, that she didn't specify the name of the officer to whom she gave the information, or that her information linked the defendant to the house. <u>Id.</u> The government also says that Judge Jones does not have appeared to consider *other* evidence Malafa may have had that led him to state that the 28th Street address was the defendant's "prior residence," such as the fact that the informant for the 28th Street address had told Malafa that

the 28th Street address was the defendant's prior residence. Id. at 12. The government asserts that what the officers found during their search of the 28th Street address "did not completely refute" the 28th Street informant's assertion that 28th Street was the defendant's prior residence, and that "one can argue that it *supported*" the 28th Street informant's claim because the defendant's aunt and cousin lived at 28th Street and the aunt said the defendant had just removed his belongings. Id.

- The government next points to Judge Jones's conclusion that Malafa had obvious reasons to know that the officers did not find the "indicia of narcotics trafficking and unlawful possession of firearms" at the 28th Street residence. Id. at 12-13. As to Judge Jones's observation that the officers had not found any guns at 28th Street, the government points out that Malafa did not say as much in the 8th Street affidavit. Id. at 13. Rather, the government emphasizes, Malafa said the officers found "indicia" of unlawful firearm possession; the government argues that the ammunition, magazines, holster and gun case found at 28th Street constituted that "indicia." Id. As to Malafa's assertion about "indicia" of drug trafficking being found at 28th Street, the government argues that Judge Jones did not consider the fact that officers found over thirty-five grams of marijuana, twenty-seven ecstasy pills in a clear plastic bag, fifty-seven prescription pills in an unlabeled pill bottle and the indicia of firearm possession at 28th Street. Id. at 15. The government asserts that these items gave Malafa a basis for stating that there were "indicia" of drug dealing at the 28th Street residence, along with his statement that in his experience, drug dealers frequently possess weapons. Id. at 14-15.

- The government next addresses Judge Jones's conclusion that Malafa did not have a basis for his statement that he knew through past experience that the defendant was involved in the trafficking of heroin and cocaine base. Id. at 15. The government asserts that the 28th Street informant had told Malafa that the defendant was armed while dealing cocaine and that the 8th Street informant told Malafa that the defendant armed himself to protect himself from other drug dealers. Id. The government also asserts that the defendant had prior convictions for distributing controlled substances, including heroin, and that this "informed Officer

Malafa's state of mind" when Malafa made the assertion. <u>Id.</u> at 15-16.

- The government then turns to Judge Jones's statement that it was unfair for the government to argue that the defendant's claims about Malafa's failure to disclose Individual A's credibility flaws were based on speculation when the government refused to confirm or deny that Individual A was the informant. <u>Id.</u> at 17. The government reiterates that the defendant relied on speculation, rather than evidence, to challenge Malafa's credibility, and that Judge Jones improperly relied on that speculation to conclude that Malafa's affidavit was misleading. <u>Id.</u> at 18.

The government then turns its focus to Judge Jones's finding that without the allegedly omitted information, the affidavit lacked probable cause. <u>Id.</u> at 19. The government asserts that Judge Jones did not specify what information about the North 8th Street informant Malafa had left out of the affidavit. <u>Id.</u> The government contends that Judge Jones was only speculating about what information might have been omitted. <u>Id.</u> It argues that Judge Jones was "inappropriately influenced by the red herring of the defendant's speculation that [Individual A] was actually [the 8th Street informant]." <u>Id.</u> at 20. The government maintains that the evidence the defendant presented contains no facts that undermine the 8th Street informant's credibility. <u>Id.</u> at 21. The government points to the fact that Judge Jones characterized the 8th Street informant's record as "unusually impressive," but speculated that it might not be as impressive if one knew more about the circumstances surrounding each warrant. <u>Id.</u>

The government also contends that when Judge Jones weighed the factors relevant to determining the credibility of an informant whose information forms the basis for a warrant affidavit, he found that more of

those factors weighed in favor of credibility than against, yet concluded that the affidavit would not have been sufficient to state probable cause without the allegedly omitted information. Id. at 22. Judge Jones held as much, the government argued, despite finding that the informant had personally seen the defendant with a gun at 8th Street, had provided that information in the week prior to the affidavit and concluding that Malafa was able to corroborate some of the information the informant had provided. Id. at 23-24.

The government challenges Judge Jones's criticisms of the lack of detail in the 8th Street informant's information. Id. at 26. It argues that the details that Judge Jones said that he would have liked to see in the affidavit—how the informant came to be at the residence, where he was in the house, or the type of gun used by the defendant—are not required to establish probable cause.

B.      The Defendant's Response (Dkt. No. 36)

The defendant accuses the government of misreading Judge Jones's order. Dkt. No. 36 at 1. The defendant asserts that if Malafa had been truthful and accurate and had included "all the material information," Paragraph 18 of the 8th Street affidavit would have read as follows, with the defendant's additions in bold:

> 18.     Affiant **suspects** that [the defendant] is involved in the trafficking of **drugs**; the affiant executed a search warrant at **a home on 28th Street** forty-two days ago; **that search was based on information from a confidential informant who claimed to have seen [the defendant] sell cocaine inside that residence; a search of that residence recovered 35.56 grams of marijuana, 21 ecstasy pills, an anti-seizure medication called Clonazepam, a gun case, two loaded magazines, and a holster, but no cocaine; the recovered drugs were not packaged for sale; officers found no packaging materials, cutting agents, large amounts of case, safes, scales, or other times suggestive of drug sales; five people**

**were present, but [the defendant] was not; officers found no mail or identifying documents with [the defendant's] name; one resident of the home told officers that [the defendant] had never lived there, although [the defendant] had visited another resident and briefly stored property there; this resident told officers that she had never seen [the defendant] with cocaine, heroin, or guns; the resident then took an officer to an address—not on 8th Street—where she believed [the defendant] lived; no charges were brought as a result of the search of the 28th Street home;** . . . .

Further, **according to reports from other officers**, the informant has provided detailed information **since at least 2007** that has led to the execution of at least one hundred search warrants, resulting in the recover of large amounts of cocaine and marijuana and at least one hundred wanted subjects. **Of these search warrants, three were executed since March 2018. The informant has also given inaccurate information during this same period.**[1]

Id. at 3.

The defendant argues that it was reasonable for Judge Jones to rely on Gowin's affidavit. Id.at 7. He notes that the government didn't object to the affidavit in any of the litigation before Judge Jones. Id. Because the government since has objected to the affidavit, the defendant explains that after Gowin interviewed Ms. Bohannon, Gowin called her and asked her to sign an affidavit of her own, which she agreed to do. Id. The defendant says Gowin drafted an affidavit for Bohannon, and Gowin and a lawyer from defense counsel's office went to the 28th Street address to meet with Bohannon. Id. at 8. The person who answered the door indicated that she

---

[1] The defendant's sole basis for his assertion that the affidavit should have said that the informant had provided inaccurate information appears in a footnote in the government's opposition brief to the motion for a Franks hearing; the footnote says, "This CI has been working with MPD for at least two years with multiple MPD officers. The officer who has been working with this CI for the past nine months has indicated that *nearly* all of the information provided over that period has proven to be accurate and has led to the execution of successful search warrants." Dkt. No. 15 at 12 n.2 (emphasis added).

was Bohannon's mother and refused to allow Gowin to speak with Bohannon. Id.

More relevant, says the defendant, is the fact that Judge Jones relied on only one of Bohannon's statements to Gowin—that she told Gowin she'd told the police the defendant didn't live at the 28th Street address—and that Judge Jones "didn't take [that statement] as a hard fact." Id. The defendant speculates that Judge Jones mentioned only this statement because it was "the most reliable one," and that Judge Jones used it "to support a point established by other evidence." Id. The defendant also asserts that the government tries to eat its cake and still have it—it argues that Judge Jones erred in considering Gowin's affidavit recounting Bohannon's statements, but also asserts that Bohannon's statements support a finding that the 28th Street address was linked to the defendant. Id. at 9. The defendant argues that the government cherry-picks the Bohannon statements that support its arguments and dismisses those that don't. Id.

The defendant next argues that the evidence he presented permits an inference that Malafa was misleading when he said the 28th Street address was the defendant's prior residence and that the search of that address revealed "proof" of narcotics trafficking unlawful gun possession. Id. at 9-10. The defendant argues that only one person told police that the defendant had lived at 28th Street, and that was the 28th Street informant. Id. at 10. The defendant insists that the search of the 28th Street address "undermined that informant's credibility," because the informant said that the defendant lived in and controlled the 28th Street residence but the police "found no physical evidence linked to [the defendant]. No property, no mail, nothing." Id. The defendant emphasizes that Bohannon said that the defendant never had lived

at 28th Street, lived at a different location and had kept property there for a short time. Id.

As to Malafa's statement that the 28th Street informant said the defendant was selling cocaine at that residence, the defendant points to the fact that the officers found no cocaine there. Id. at 10-11. He also asserts that the officers "found no 'indicia' of drug sales at all—no corner cuts, no baggies, no cutting agents, no California scales, no large amounts of cash, no drug residue." Id. at 11. He says that the officers found only a "small amount of marijuana, about twenty ecstasy pills, and some clonazepam—a prescription antiseizure medication." Id. The defendant argues that these drugs weren't "packaged for sale," that the officers found no guns and that "[n]o charges were brought as a result of this search." Id. Relating to the assertion about indicia of illegal firearms possession being found at 28th Street, the defendant asserts that none of the firearms-related items were found near the drugs; he says the gun case was in the basement, and the loaded magazines and holster were found in a separate room. Id. at 12.

The defendant also maintains that Judge Jones considered Malafa's state of mind, finding it reasonable to expect that Malafa's statements would be consistent with the results of the 28th Street search. Id. at 12-13. The defendant points to statements Malafa made that were not consistent with the results of that search—stating that the defendant lived at 28th Street, saying that the search revealed indicia of narcotics trafficking. Id. at 13. The defendant disagreed with Judge Jones that Malafa's statement that the 28th Street search occurred within the past thirty days when it occurred forty-two days prior was immaterial; the defendant asserts that by claiming that the

search occurred within the past thirty days, Malafa made it seem as if the prior search were "more timely." Id. at 13.

The defendant asserts Malafa's statement that he "knew" that the defendant was involved in trafficking heroin and cocaine base "went too far." Id. at 14. He asserts that the 28th Street informant didn't mention heroin or crack; he/she said only that he/she had seen a sale of cocaine. Id. He says the 8th Street informant said *nothing* about seeing drugs. Id. He says the 28th Street search did not uncover cocaine, crack or heroin. Id. The defendant asserts, therefore, that Judge Jones's conclusion that the record didn't support Malafa's claim that he knew from past experience that the defendant was involved in heroin or crack trafficking at the time of the warrant application was reasonable. Id.

The defendant argues that Judge Jones did not hold against the government its refusal to confirm or deny that Individual A was one of the informants when Judge Jones considered the first two prongs of the Franks standard. Id. at 15. The defendant thinks Judge Jones should have relied on evidence about the 8th Street informant's record to conclude that Malafa had knowingly omitted material information. Id. The defendant states:

> No informant works for 11 years without having a long criminal history. Nor could such an informant have a perfect track record. Indeed, the informant did not, and had given wrong information just since March 2018. *See* Doc. 15 at 12, n.2 (claiming that "nearly" all of the informant's recent information had been accurate).

Id. The defendant also asserts that Malafa didn't have personal knowledge about the informant's track record, because Malafa been an officer for only three years. Id. at 16. The defendant says, "As far as what Officer Malafa did know, that informant had generated three search warrants in the five months

leading up to the 8th Street warrants—notable, yes, but far from the figures cited in the affidavit." <u>Id.</u>

The defendant says that even though he disagrees with some of Judge Jones's analysis, "[Judge Jones] got it right overall." <u>Id.</u> The defendant agrees that the evidence showed that the "affidavit was 'infected' by a recurring 'defect': 'using broad characterizations instead of precise descriptions.'" <u>Id.</u> (citing Dkt. No. 29 at 11). The defendant says the broad characterizations were wrong. <u>Id.</u>

Finally, the defendant argues that Judge Jones was right that the affidavit would not have stated probable cause if the allegedly omitted information had been included. <u>Id.</u> at 17. He asserts that if the evidence permits an inference that probable cause was lacking, that is enough to require the <u>Franks</u> hearing. <u>Id.</u> He criticizes the government for citing decisions that analyze probable cause in contexts other than a <u>Franks</u> challenge. <u>Id.</u> at 17-18. And he argues that there was a lot more that Judge Jones could have mentioned many other facts in support of his analysis of the informant credibility factors that would have shored up his conclusion that the 8th Street informant was not reliable enough to support a probable cause finding. <u>Id.</u> at 18-24.

## VII.  ANALYSIS

### A.    <u>Standard of Review</u>

Judge Jones's decision granting the defendant's motion for <u>Franks</u> hearing was a non-dispositive order. Rule 59(a) governs the referral of non-dispositive matters—in this case, the motion for a <u>Franks</u> hearing—to magistrate judges. Fed. R. Crim. P. 59(a). It requires the district court to consider timely objections and to "modify or set aside any part of the order that

is contrary to law or clearly erroneous." <u>Id.</u> The government's objection was timely, so the court must modify or set aside any part of the order that is contrary to law or clearly erroneous. The clear error standard means that the court may overturn the magistrate judge's ruling only if it is "left with the definite and firm conviction that a mistake has been made." <u>United States v. Jefferson</u>, 2009 WL 4549189, *1 (E.D. Wis. Nov. 27, 2009) (citing <u>Weeks v. Samsung Heavy Indus. Co.</u>, 126 F.3d 926, 943 (7th Cir. 1997)).

B. *Franks* <u>Hearing Standard</u>

Under the Fourth Amendment, the use of search warrants calls for probable cause determinations by a "neutral and detached magistrate." <u>United States v. Clark</u>, 935 F.3d 558, 563 (7th Cir. 2019) (quoting <u>Johnson v. United States</u>, 333 U.S. 10, 14 (1948)). "The application for the warrant 'must provide the magistrate with a substantial basis for determining the existence of probable cause.'" <u>Id.</u> (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 239 (1983)). It stands to reason that the "neutral and detached" magistrate's ability to determine whether the affidavit for the warrant states probable cause "depends on the accuracy of the information the police submit." <u>Id.</u> A warrant isn't valid if the police get it "'by deliberately or recklessly presenting false, material information,' or by omitting material information from the affidavit provided to the issuing judge." <u>Id.</u> (quoting. <u>McMurtrey</u>, 704 F.3d at 508). If a defendant seeks to invalidate a warrant on the ground that the police obtained it by purposefully or recklessly presenting false material information or omitting material information, "a defendant at a so-called *Franks* hearing must prove by a preponderance of the evidence either falsity or recklessness, as well as materiality." <u>Id.</u> (citing <u>McMurtrey</u>, 704 F.3d at 509).

"There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant." Franks, 438 U.S. at 171. Given that,

> [t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn other otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted . . . is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.

Id. at 171-172.

To convince a court to hold a Franks hearing, the defendant "does not need to prove the *Franks* violation." Clark, 935 F.3d at 563. He must "only make a substantial and preliminary showing (1) that the warrant application contained a material falsity or omission that would alter the issuing judge's probable cause determination, and (2) that the affiant included the material falsity or omitted information intentionally or with a reckless disregard for the truth." Id. (citing Glover, 755 F.3d at 820).

Despite the Clark court's use of the word "only," the Seventh Circuit has observed in other cases that "[i]t is relatively difficult for a defendant to make the 'substantial preliminary showing' required under *Franks*." McMurtrey, 704 F.3d at 509. As discussed in Franks itself, the defendant must allege that the affiant made false material statements, or omitted material information,

49

deliberately or recklessly, must support those claims by sworn statements and must show that without the statements or omissions, there would be no probable cause. Id. (citing <u>Franks</u>, 438 U.S. at 171-172.) The Seventh Circuit has explained that "'[t]hese elements are hard to prove, and thus *Franks* hearings are rarely held.'" <u>Maro</u>, 272 F.3d at 821 (quoting <u>United States v. Swanson</u>, 210 F.3d 788, 790 (7th Cir. 2000)). "A defendant seeking a *Franks* hearing 'bears a substantial burden to demonstrate probable falsity.'" Id. (quoting <u>United States v. Hornick</u>, 815 F.2d 1156, 1158 (7th Cir. 1987)). And "'an unimportant allegation, even if viewed as intentionally misleading, does not trigger the need for a *Franks* hearing.'" Id. (quoting <u>Swanson</u>, 210 F.3d at 791). To demonstrate the requisite state of mind of the affiant, "the defendant must offer direct evidence of the affiant's state of mind or circumstantial evidence that the affiant had a subject intent to deceive based on the nature of the omissions." <u>Glover</u>, 755 F.3d at 820 (citations omitted).

Even in cases in which the affidavit is based on information from an informant, a court is not required to hold a <u>Franks</u> hearing every time "some substantial adverse information about an informant's credibility is omitted from a probable cause affidavit." <u>Clark</u>, 935 F.3d at 565. "[C]redibility omissions do not *require* courts to infer recklessness." <u>Id.</u> at 566 (emphasis in the original). The Seventh Circuit affirmed the denial of a <u>Franks</u> hearing where the police omitted damaging information about one informant's credibility when a second informant without credibility issues provided the police with specific information. <u>United States v. Musgraves</u>, 831 F.3d 454, 459-60 (7th Cir. 2016). The court has affirmed the denial of a <u>Franks</u> hearing where the affidavit included specific information about the informant and his reliability. <u>United States v. Hancock</u>, 844 F.3d 702, 707-10 (7th Cir. 2016).

As noted above, if the court concludes that there were material false statements or material information was admitted, and concludes that the affiant deliberately or recklessly made the false statements or omitted the material information, the court then must determine whether the falsehoods or omissions were material to the probable cause determination. In cases where the affidavit is largely based on tips from the informant, probable cause can be shown based on the totality of the circumstances. Id., 935 F.3d at 565. The Seventh Circuit has identified five factors of particular relevance when an informant is involved: (1) the level of detail the informant provided; (2) the extent to which the informant's information is based on his or her own first-hand observations; (3) the degree to which police have corroborated the informant's information; (4) the time elapsed between the events reported and the warrant application; (5) and "whether the informant appeared or testified before the magistrate." Glover, 755 F.3d at 816 (citing United States v. Johnson, 655 F.3d 594, 600 (7th Cir. 2011)).

C.     The *Franks* Procedure

While the court does not believe that Judge Jones erred in the procedure he used to decide the motion for a Franks hearing, the court feels it necessary to comment on one aspect of the proceedings, because this is the second time the court has confronted the issue in less than a year.

As the cases indicate, the burden of making the substantial preliminary showing of material falsity or omission and the affiant's state of mind is on the *defendant.* The *defendant* must support those claims with evidence in order to make that substantial preliminary showing. But, as the Seventh Circuit has noted, "[i]t's not always easy to draw the *Franks* line between sufficient and insufficient showings, so in some cases district courts have held 'pre-*Franks*'

hearings to give defendants opportunities to supplement or elaborate on their original submissions." McMurtrey, 704 F.3d at 509. For example, in a case where the defendant had provided "only conclusory assertions that the allegations in the affidavit were false" without providing any "evidence other than his own self-serving statements," the district court, "in an abundance of caution," held an evidentiary hearing to allow the defendant to develop his argument. United States v. Taylor, 154 F.3d 675, 680 (7th Cir. 1998). But holding such a hearing carries risk.

> The problem arises . . . when a 'pre-Franks' hearing becomes a vehicle for the government to present new evidence to explain the discrepancies identified by the defense, yet the defense is not given a full opportunity to challenge or rebut that evidence. Such government evidence is appropriate for the *Franks* hearing itself, where the defense must have the opportunity for full cross-examination. [*United States v.*] *Harris*, 464 F.3d [733] at 739 [(7th Cir. 2006)] ("The opportunity to cross-examine an officer who has intentionally or recklessly made false statements to procure a search warrant is an important aspect of a *Franks* hearing."). In the *Harris* case, the district court allowed the government to bolster its affidavits but did not allow full cross-examination by the defense. For that reason, we reversed the denial of the *Franks* motion and remanded for a full hearing on the merits. *Harris*, 464 F.3d at 741-41.

McMurtrey, 704 F.3d at 509.

The McMurtrey court ruled that the district court's pre-*Franks* hearing had gone "astray when the court allowed the government to bolster" the affiant's "affidavit with additional testimony to explain the discrepancies and contradictions, but then denied the defendant the opportunity to cross-examine [the affiant] fully on his affidavit." Id. at 510. The court held that in doing so, the district court "overstepped the bounds of a pre-*Franks* hearing, but fell short of the procedures required for a full *Franks* hearing." Id. The court concluded that the district court "should have limited its consideration of

new information to the defense's evidence tending to refute probable cause," and "should not have considered at that preliminary step the government's explanation of the contradictions and discrepancies." Id.

In responding to the appeal in McMurtrey, the government relied on the Seventh Circuit's decision in United States v. Spears, 673 F.3d 598 (7th Cir. 2012). In Spears, the government responded to the defendant's Franks motion and the attached evidence by filing its own affidavit from the affiant. Id. at 602. Based on those filings, the district court denied the defendant's motion for a hearing. Id. The defendant then filed a supplemental motion. Id. At that point, the court "determined that a *Franks* hearing was necessary." Id. In McMurtrey, the government tried to support its argument that the district court had not erred when it considered the additional testimony by pointing to the fact that the district court in Spears had denied the defendant's motion for a Franks hearing once it reviewed the affidavit submitted by the government. McMurtrey, 704 F.3d at 509 n.3. The Seventh Circuit rejected that argument, noting that in Spears, the district court "had later granted a full *Franks* hearing after the defendant filed still more evidence." Id. The court cautioned that "[o]ur description of the procedures used in *Spears* should not be construed as having approved the use of the government's new affidavit to deny the original motion for a *Franks* hearing," emphasizing that the district court's "later *Franks* hearing rendered that issue moot." Id.

In Harris—the case the Seventh Circuit cited in McMurtrey—the district court responded to the defendant's motion for a Franks hearing by directing "the government to file a supplemental affidavit from [the affiant] answering questions about his conversations with the CI." Harris, 464 F.3d at 739. The district court then concluded, based on the supplemental affidavit, that

probable cause for the search existed. Id. The Seventh Circuit found that "[h]ere, the district court erred." Id. The court explained that

> Considering new information presented in the supplemental filing that supported a finding of probable cause was beyond the trial court's analytical reach. Rather, its consideration of new information omitted from the warrant affidavit should have been limited to fact that did not support a finding of probable cause.

Id. In other words, "[a]llowing the government to bolster the magistrate's probable cause determination through post-hoc filings does not satisfy the Fourth Amendment concerns addressed in *Franks*." Id.

Several months ago, this court relied on McMurtrey when it concluded that a magistrate judge had committed clear error by considering information proffered by the government, including a letter from a case agent, in deciding to deny a defendant's request for a Franks hearing. In United States v. Lewis, 386 F. Supp. 3d 963 (E.D. Wis. 2019), after the parties had briefed the defendant's motion for a Franks hearing, the magistrate judge asked to have a status conference with the lawyers. Id. at 980. At that hearing, the *government* addressed questions from the magistrate judge "as to the date the conversation took place that is referenced in paragraph 7 of [the affidavit]." Id. The government also "'direct[ed] attention to a letter produced in discovery from a case agent, relating a conversation from a [confidential source]' because 'the substance that was [memorialized] in the affidavit is backed up by the letter from the CS.'" Id. Based on McMurtrey, this court concluded that the magistrate judge erred "in allowing the government to explain away the discrepancies the defendants had identified in the motion to suppress without converting the [status conference] into a full-blown Franks evidentiary hearing." Id. at 982. The government had argued that it had not presented evidence at the status conference, but simply had "relied upon evidence

produced in discovery 'to refute the defendants' serious accusations that the affiant perjured himself or made material false statements in reckless disregard of the truth . . . .'" Id. at 981. It also argued that it hadn't presented evidence because "'no one was called to testify at the [status conference]." Id. at 982. This court rejected those arguments. The court found that the government had conceded that it provided the magistrate judge with the case agent's notes and the letter from the confidential source. Id. It stated that it was "at a loss to understand how giving the court information that it did not have in order to rebut the defendants' allegations of false statements or omissions does *not* constitute presenting evidence, whether the documents were presented through the testimony of a witnesses or just handed to the judge." Id. The court found that the purpose of providing the magistrate judge with the documents was an attempt to rebut the defendants' allegation of falsity, which was "what the Franks hearing itself is for." Id. The court concluded that by allowing the government to present evidence rebutting the defendants' assertions of falsity, the magistrate judge "did what McMurtrey says a district court cannot do." Id.

In this case, the government provided new, rebuttal information to Judge Jones in its brief in opposition to the defendant's request for a Franks hearing. In a footnote on page 12 of that motion, it stated that the 8th Street informant had been working with the Milwaukee Police Department for at least two years, had worked with multiple officers and had been working with a particular officer for the past nine months. Dkt. No. 15 at 12 n.2. The government represented that the officer had indicated that "nearly all of the information provided over that time period has proven to be accurate and has led to the execution of successful search warrants." Id. The government also submitted

evidence to Judge Jones for *in camera* review and hinted at the contents of that evidence in its brief. Id. at 16 ("[A]s indicated in the evidence submitted to this Court for *in camera* review, other individuals had shared with Officer Malafa information showing that [the defendant] continued his drug dealing activities after his release from prison.").

The Harris and McMurtrey line of cases prohibited Judge Jones from considering the government's evidence without holding a full-blown Franks hearing. Judge Jones knew that. In a text-only order issued March 1, 2019, Judge Jones stated, "The materials the government submitted *in camera* will be returned to counsel, as the Court has not yet reviewed these materials and, therefore, they have not played any role in this Court's decision-making." Dkt. No. 27. In his order granting the defendant's motion for a Franks hearing, Judge Jones elaborated:

> [O]ne of the 28th Street residents claimed she told the police that [the defendant] never lived there. *See Franks* Mot. Ex. G., at ¶ 4. The government criticizes this evidence as "uncorroborated" and "biased" and attempted to refute it by submitting documents for *in camera* review. *See* Govt's Resp.at 13-14. The Court returned those materials to the government. *See* Text Only Order, ECF No. 27. The time for the government to present its own evidence in support of the affidavit is at the *Franks* hearing, not beforehand. *See McMurtrey*, 704 F.3d at 509-10 (vacating the denial of a request for a *Franks* hearing because the district court improperly "relied on the government's new bolstering evidence"); *Harris*, 464 F.3d at 738-39 (same).

Dkt. No. 29 at 10.

Given this, the court is stymied by a footnote in the government's objection to Judge Jones's order granting the defendant's motion for a Franks hearing:

> The United States presented evidence *in camera* for Judge Jones to consider some of the context for Officer Malafa's statement. Judge Jones returned that information to the United States without

reviewing it because he determined this was an improper attempt to "bolster" his affidavit. (Dkt. 28 & 29 at 10.) The purpose of this information was not to bolster the evidence in the affidavit, but to provide context to the question of Officer Malafa's *state of mind*, which is the principal inquiry. If this Court thinks it may be necessary to review this information to consider his state of mind, and not as a means to bolster the evidence in the affidavit, the United States will present it. However, even without this context, as the United States argues herein, the defendant failed to meet his substantial burden, which can be the basis for denying his motion.

Dkt. No. 32 at 12 n.3.

The government seems to contend that presenting its own evidence rebutting the defendant's arguments as to Malafa's state of mind does not constitute "bolstering" the affidavit or an attempt to rebut the defendant's evidence. The court doesn't understand that reasoning. Harris and McMurtrey make clear that if the government chooses to oppose a request for a Franks hearing, that opposition is confined to arguing that the defendant's evidence is insufficient to make the substantial preliminary showing. The court may not consider new evidence from the *government* in deciding whether to grant a Franks hearing, whether the government provides the evidence to the court at a status conference or drops it off in chambers for *in camera* review[2] or proffers what the evidence would show in a footnote in a pleading. The fact that the government does not put an exhibit sticker on the document containing the new information, or call a witness to testify to the new information, does not convert the new information into something other than evidence. In deciding

---

[2] Providing the evidence *in camera* for the court's review seems to be the worst possible option for the government to elect, given the reasoning in Harris and McMurtrey. Not only does the defendant not have the opportunity to respond test the evidence at a full-blown Franks hearing, but the defendant cannot even see the new evidence that the government asks the court to use to deny the motion for the Franks hearing.

whether to grant the motion for a <u>Franks</u> hearing, the court cannot consider information that was not in the affidavit and not provided by the defendant.

The court understands the government's compulsion to provide evidence. It is what the government does. In most of situations that arise in criminal prosecutions, it is the government's burden to present evidence to support its allegations. The procedure for a defendant to obtain a <u>Franks</u> hearing reverses roles; the defendant must put forward evidence to make the substantial preliminary showing, and the government is confined to arguing that the defendant's evidence is insufficient. The law prohibited Judge Jones from considering information provided by the government, and Judge Jones committed no error—clear or otherwise—in declining to review and consider it.

D. <u>The 8th Street Affidavit and the Defendant's Evidence</u>

The court cannot say the same, however, about Judge Jones's determination that the defendant made the substantial preliminary showing that Malafa made material false statements in or material omissions from the 8th Street affidavit and that he did so intentionally or recklessly.

The government is correct that the court must presume Malafa's 8th Street affidavit was valid. The government also is correct in emphasizing that the guiding principal for a court in deciding whether the defendant has made the substantial preliminary showing is the affiant's state of mind. As <u>Franks</u> and its progeny explain, innocent mistakes are not enough to justify a <u>Franks</u> hearing. Negligence is not enough. The defendant must make "a substantial and preliminary showing (1) that the warrant application contained a material falsity or omission that would alter the issuing judge's probable cause determination, and (2) that the affiant included the material falsity or omitted

information intentionally or with a reckless disregard for the truth." Id. (citing Glover, 755 F.3d at 820).

Hewing to that guiding principle, the court reviews only the defendant's evidence in support of the alleged false statements and misleading statements in, and omissions from, the 8th Street affidavit, and considers whether that evidence makes a substantial preliminary showing that Malafa made any false or misleading statements or material omissions intentionally or recklessly.

1. *Paragraph 16—Malafa's assertion that he received information from a "reliable informant"*

a. The "Individual A" Theory

Malafa attested that the information in paragraphs 16, 17, 19, and 22 of the 8th Street warrant came from a "reliable confidential informant." Dkt. No. 13-8 at ¶16. He said that he believed the informant was credible because the informant had described the defendant, positively identified him "through Milwaukee Police Department Resources" and had provided detailed information about criminal activity at the defendant's residence. Id. at ¶23. Malafa said that the informant "ha[d] provided detailed information against [his/her] penal interest during a criminal investigation." Id. He said the informant also had provided detailed information leading to the execution of at least 100 search warrants, "leading to the recovery of a large amount of cocaine and marijuana, and at least one hundred (100) wanted subjects." Finally, Malafa said that the informant had "shown [Malafa] the locations of drug houses from which the affiant and other law enforcement officers have recovered and made arrests for narcotics possession offenses and firearms recoveries in the past." Id.

In the request for a Franks hearing, the defendant assumed that the informant Malafa described in these paragraphs was Individual A—Aretha

Johnson's boyfriend. He assumed this because Johnson told Investigator Gowin that she thought her boyfriend was the informant for both the 28th Street and 8th Street warrants. The defendant argued that Individual A was not reliable, that Malafa knew Individual A was not reliable and that Malafa should have disclosed the facts casting doubt on Individual A's reliability in the 8th Street affidavit.

The government "confirm[ed]" in its December 13, 2018 responding brief that the informant who provided the information for the above paragraphs of the August 2018 8th Street warrant was *not* the informant who provided information for the July 2018 28th Street warrant. Dkt. No. 15 at 5. Judge Jones noted as much in his February 19, 2019 order ruling on the motion to compel. Dkt. No. 24 at 5, 8. At that point, defense counsel was aware that there were two informants—one who provided the information in support of the 28th Street warrant and another who provided information in support of the 8th Street warrant. Even if the defendant's speculation that Individual A was an informant was correct, then, there was a 50/50 chance that he was the informant on the 8th Street warrant.

Yet in his reply brief, the defendant again assumed that the 8th Street informant was Individual A, and again insisted that Malafa had reason to know that Individual A was unreliable and should have disclosed that fact. Dkt. No. 28 at 1-2. The defendant asserted that he had "a strong reason" to believe that Individual A "informed on [the defendant]"—presumably referring to the fact that the defendant's "long-time girlfriend" (Johnson) had told the defense investigator that she believed Individual A was "the" informant, and that the government "has never denied that [Individual A] is the informant, and has refused to say that he isn't." Id. at 6. Regarding the fact that there was more

than one informant, the defendant noted that in his order granting the motion to compel, Judge Jones had "opined that [Individual A] seemed more likely to be the informant for the 28th Street warrant than the 8th Street warrant." Id. at 6 n.2.[3] The defendant, however, argued that Individual A was "in his 50s," and that "the government's submission reveals that the 8th Street informant has been cooperating with police for over a decade."[4] Id.

The defendant's evidence does not support a conclusion that Malafa's statement that the 8th Street informant was "reliable" was false or misleading, or that Malafa omitted material information about the informant, based on the "Individual A" theory. The defendant has presented evidence that Individual A fled a suspected drug deal on May 26, 2018, that he admitted fleeing and that the other participant in the drug deal identified Individual A as the person who was selling him crack. Dkt. No. 13-2 (police reports). He has presented evidence that on June 29, 2018, Malafa signed an affidavit for a search warrant a residence allegedly used by Individual A for drug trafficking. Dkt. No. 13-3 (search warrant and affidavit). He has presented evidence that Individual A was arrested on July 2, 2018, Dkt. No. 13-2 at 13, and released due to the District Attorney's decision not to prosecute it, id. at 14. He has presented evidence

---

[3] Judge Jones stated in the motion to compel, "[T]he benefit to [the defendant] of knowing whether the 8th Street CI is [Individual A] is minimal. That information would only be relevant if [Individual A] is in fact the informant. While [the defendant] presented compelling evidence for believing that [Individual A] is the 28th Street CI, his case for believing [Individual A] is the 8th Street CI is dubious, especially given the government's affirmation that the informants are not the same person." Dkt. No. 24 at 9.

[4] The defendant appears to have intended to provide a record cite for this assertion, because "*See* Ex." appears after the last sentence in the footnote. But he provided no exhibit number, and there were no exhibits attached to the government's response brief. The court assumes that the defendant was referring to the government's letter of March 12, 2019, at Dkt. No. 28-1.

that Individual A was in custody from July 6, 2018 through July 10, 2018. Dkt. No. 13-4 (offender detail). None of that evidence supports the conclusion that the informant for the 8th Street warrant was Individual A.

The defendant has *argued* that Individual A is the defendant's mother's long-time boyfriend. But there is no *evidence* to that effect in the record—there is no affidavit from the defendant's mother, or from anyone else, proving this claim. It appears that at the January 18, 2019 hearing on the motion to compel, Investigator Gowin testified that he had met with the defendant's mother and that she had both referred to Individual A as her boyfriend and told Gowin that she believed that he was the informant for both the 28th Street and 8th Street warrants. Dkt. No. 23 at 2. There is no transcript of that hearing, nor does the evidence include an affidavit from Gowin or the defendant's mother attesting to those facts.

Even if the court had *evidence* that Individual A was the defendant's mother's long-time boyfriend, the only information connecting Individual A to the 8th Street warrant is the defendant's mother's assertion to Gowin that she "believed" that Individual A was the informant for both affidavits. There is no *evidence* supporting that belief.

In his initial brief, the defendant pointed to circumstantial evidence that he argued supported a conclusion that Individual A was the affiant for the 28th Street warrant—timing. The defendant pointed out that police had arrested Individual A on July 2, 2018 in the wake of the search of the alleged drug house, that no charges were issued and that Individual A appears to have been released from custody on July 10, 2018. He pointed out that Malafa signed the 28th Street affidavit on July 8, 2018 (two days before Individual A's release), and provided evidence that the search of the 28th Street residence occurred on

July 10, 2018. Dkt. No. 13-6. The defendant appears to have considered this timing, plus the defendant's mother's statement to Gowin, and concluded that Individual A was the informant for the 28th Street warrant.

In this court's view, the defendant's conclusion that Individual A was the informant for the 28th Street warrant is speculation based on circumstantial evidence. But it doesn't much matter, because it sheds no light on whether Individual A was the informant on the *8th Street* affidavit—the affidavit the defendant claims contains false or misleading statements or suffers from material omissions.

Because the affidavits themselves show that they were based on information from different informants—the informant for the 28th Street affidavit had provided information for a handful of search warrants, while the informant for the 8th Street affidavit had provided information leading to over 100 search warrants—even if the defendant's speculation and conjecture are correct, and Individual A *was* the informant for the 28th Street warrant, that means he wasn't the informant for the 8th Street warrant. In his reply brief, the defendant does an about-face, and posits that because of Individual A's age, he's more likely to have been the confidential informant in for the 8th Street affidavit—the person who had provided information leading to over 100 search warrants and over 100 wanted subjects. This is speculation on top of speculation.

The defendant relies on the Individual A theory for one other argument. He points to paragraph 34 of the 8th Street affidavit, in which Malafa says that a "secondary" informant had seen the defendant armed with a firearm during drug transactions in the past thirty days. He assumes that that "secondary" informant is the informant who provided the information for the 28th Street

63

warrant.[5] Even if that assumption is correct, the court has concluded that the defendant's assumption that Individual A was the informant for the 28th Street warrant is speculation based on circumstantial evidence.

Although the court agrees with the government that the Individual A theory was a red herring, it notes that Malafa's reliance on boilerplate language in the affidavit enabled the theory, and that the government relied on that boilerplate in its arguments. In responding to the defendant's argument that Malafa did not disclose that the informant—whom he believed to be Individual A—was trying to "work off" criminal charges and had been involved in criminal activity, the government asserted that the affidavit *did* disclose that information. The government pointed to the statement in ¶8 of the affidavit that the informant had given a statement "against their own penal interest." Dkt. No. 15 at 9. The government pointed to ¶13 of the affidavit, which stated that the informant's knowledge was based on his "personal involvement in the purchase of narcotics" and that the informant had implicated himself or herself in the crimes. <u>Id.</u>

This argument weakened the government's position. As discussed above, a comparison of the 28th Street and 8th Street affidavits shows that this language appears in both affidavits, as well as in the affidavit in support of the

---

[5] The court acknowledges the defendant's assertion in his response to the government's objection that the government has "recently confirmed . . . that the 'secondary informant' mentioned in the 8th Street affidavit is the informant in the 28th Street affidavit." Dkt. No. 36 at 13 n.3. The court questions whether it ought to consider that information given the holdings in <u>Harris</u> and <u>McMurtrey</u>. One could argue that the government did not willingly present the information, that it presented the information to the *defendant* and not the court and that the defendant arguably has chosen to include that information in his presentation of "proof." Given the court's conclusion that it is speculative whether Individual A was the informant for the 28th Street warrant, however, the court will not discuss this information further.

warrant to search Individual A's drug house (Dkt. No. 13-3 at page 5, ¶1; page 6, ¶6). Different informants provided the information for each of the three affidavits, yet Malafa included identical boilerplate support for the informants' reliability in all three. The government's reliance on boilerplate not tailored to the 8th Street informant to argue that the 8th Street affidavit disclosed that informant's motivation and involvement in criminal activity weakened the strength of its other arguments. And Malafa's extensive use of boilerplate provided fodder for the defendant's arguments.

      b.    The "100 Warrants and 100 Wanted Subjects" Theory

The defendant also asserts that Malafa omitted material information about the 8th Street informant relating to Malafa's assertion that the informant had "provided detailed information in the past that ha[d] led to at least one hundred (100) search warrants, resulting in the recovery of a large amount of cocaine and marijuana, and at least one hundred (100) wanted subjects." Dkt. No. 13-8 at ¶23. The defendant first asserted that Malafa didn't state the period over which the informant provided this information, asserting that "an outdated track record is less impressive than a recent track record." Dkt. No. 13 at 17. He speculated that, "with such a long record, that informant must have given bad information many times too," then criticizes Malafa for not stating how many unsuccessful tips the informant had given. Id. at 17-18.

None of the defendant's evidence shows that Malafa omitted material information. The defendant has not provided *evidence* indicating that the information was outdated. The defendant has not presented *evidence* that the informant provided bad information. An informant whose information leads a judicial officer to issue over 100 search warrants and who has led police to over 100 wanted subjects has demonstrated a level of reliability, whether he

provided the information over one year or ten. The defendant's speculation that the informant "must have" provided bad information is just that, and while the odds are that he is right, speculation is not enough to warrant a conclusion that Malafa intentionally omitted negative information. Even if the informant *did* provide information that didn't pan out, the defendant has presented no evidence that that fact would have been material. If he gave bad information five times but good information 100 times, would the bad information have been material? If he gave bad information fifty times but good information 100 times, would it have been material? There is no evidence that Malafa omitted material information—only the defendant's speculation.

Between the defendant's opening brief and his reply brief, the government provided the information that the officer working with the 8th Street informant during the last nine months of 2018 indicated that "nearly all" of the informant's tips had been accurate.[6] The defendant seized on that to argue in his reply brief and his brief in opposition to the government's objection that Malafa should have disclosed in the affidavit that "some" of the informant's information during that period was not accurate. When "nearly all" of the informant's information was accurate, the fact that "some" of it wasn't is not material.

The defendant engaged in further speculation in his reply brief, none of which is supported by the evidence he has provided. He argued that Malafa did not state how many times the informant had given inaccurate information, whether the informant ever had lied to the police, whether the informant had

---

[6] Again, this is information presented by the *government* in support of probable cause and the court questions whether Harris allows the court to consider it. But the defendant has adopted it as part of his "evidence" that Malafa omitted information.

committed crimes while cooperating or whether the informant ever had been paid for cooperated. Dkt. No. 28 at 5. The defendant has provided no *evidence* indicating that there was any such information for Malafa to disclose—only his reasoning that "[g]iven the informant's long history with police (and what that suggests about the informant), all four things are likely true." Id. at 5-6. He reiterated that speculation in his opposition to the government's objection, stating (without evidentiary support) that "[n]o informant works for 11 years without having a long criminal history" and that such an informant couldn't have a perfect track record. Dkt. No. 36 at 15. Speculation that something "likely" is true, or skepticism that something isn't true, is not evidence, and does not support a conclusion that Malafa omitted material information from the affidavit.

The defendant also asserted that Malafa couldn't have had personal knowledge of the informant's track record "having been an officer for just three years."[7] Id. at 16. This argument is not persuasive—Malafa didn't say he had personal knowledge of the track record, and the paragraph talks about the informant giving information to "law enforcement."

> 2. *Paragraph 18—Malafa's statements about what he knew through past experience*

Paragraph 18 consists of two sentences separated by a semicolon. The first sentence stated, "Affiant knows through past experience that [the defendant] is involved in the trafficking of Heroin and Cocaine base." Dkt. No. 13-8 at ¶18. The second sentence read, "[T]he affiant executed a search warrant at [the defendant's] prior residence within the last thirty (30) days, in

---

[7] The assertion is ironic given the defendant's criticism that Malafa was imprecise; Malafa attested that he had been an officer for three *and a half* years at the time of the affidavits. Dkt. No. 13-5 at ¶2; Dkt. No. 13-8 at ¶2.

which indicia of narcotics trafficking and unlawful possession of firearms were located." Id.

The defendant has made multiple challenges to this paragraph. The most straight-forward challenge is to Malafa's assertion that he'd executed a search warrant "within the last thirty (30) days." The defendant assumes (likely correctly) that Malafa was referring to the July 10, 2018 search of the 28th Street address and argues that that search took place forty-two days prior to the signing of the 8th Street affidavit, not thirty days or less. Thus, he argues, Malafa made a false statement in paragraph 18. The government and Judge Jones agreed that Malafa's statement that the 28th Street search took place within the thirty days prior to the date he signed the 8th Street affidavit was false. This court also agrees. But the issue in relation to the request for the Franks hearing is whether the false statement was material, and whether there is any evidence to indicate that Malafa knowingly or recklessly made the false statement. It is unlikely that the court commissioner would have refused to authorize the warrant had he known the prior search took place forty-two days earlier, but agreed to authorize it had the search taken place within the past thirty days. A difference of months likely would have been material, but not a difference of less than two weeks.

Nor is there any evidence that Malafa intentionally or recklessly misstated the time frame for the 28th Street search. The defendant argues that because Malafa executed both searches, he had to know the date on which he executed the 28th Street search. From that, he infers that Malafa must have deliberately or recklessly misstated the time frame. The other alternative, however, is that Malafa didn't remember the exact date of the 28th Street search warrant on the date he signed the 8th Street affidavit, so he "guess-

timated." The defendant has not presented any evidence that Malafa didn't just make a mistake, or that he wasn't simply negligent. In fact, the entirety of the evidence supports a conclusion of negligence, or sloppiness, rather than a conclusion of deliberate falsehood.

The defendant makes the same timing argument regarding paragraph 34 of the 8th Street affidavit, in which Malafa indicated that the secondary informant had seen the defendant armed with a "firearm during drug transactions in the past thirty (30)." Dkt. No. 13-8 at ¶34. The defendant argues that Malafa was referring to the informant who provided the 28th Street information. The 28th Street affidavit said the informant had seen the defendant with a gun during a drug transaction within the prior week—that is, the week before July 8, 2018. Thus, the defendant argues, the informant saw the defendant with a gun at 28th Street somewhere between July 1 and July 8, 2018—anywhere from forty-five to fifty-one days before Malafa signed the 8th Street warrant, not within thirty days prior. The court agrees that Malafa's "within the past thirty (30) [days]" statement appears to be false, but for the reasons discussed above, does not consider it material and sees no evidence that Malafa intentionally misstated the time frame.

Next, the defendant takes issue with Malafa's statement that Malafa knew, "through past experience," that the defendant was "involved in the trafficking of Heroin and Cocaine base." The defendant assumes that the "past experience" to which Malafa referred was his experience in executing the 28th Street search warrant. The government responds that Malafa was referring to more than just that. The court understands the defendant's assumption. It is supported by the structure of paragraph 18—the two sentences separated by a semicolon. "A semicolon is most commonly used to link (in a single sentence)

two independent clauses that are closely related in thought." UW-Madison Writer's Handbook, Grammar and Punctuation, Using Semicolons, https://writing.wisc.edu/handbook/grammarpunct/semicolons/, last visited February 17, 2019. Malafa's choice to connect the first sentence, stating that he knows from past experience that the defendant was involved in trafficking heroin and crack, with the second sentence, discussing the execution of the 28th Street warrant, gives the impression that the "past experience" to which the first sentence refers is the 28th Street search. The government's insistence that Malafa's reference to "past experience" included more than just the 28th Street search may be true, but that isn't what paragraph 18 implies.

Given the impression created by paragraph 18's sentence structure, the defendant contends that the 28th Street search could not have provided Malafa with knowledge that the defendant was involved in trafficking heroin and crack. The informant for the 28th Street warrant told Malafa that the defendant was using the 28th Street address to "store and distribute quantities of *cocaine*." Dkt. No. 13-5 at 5, ¶1. The informant told Malafa that within the week prior to the date on the 28th Street affidavit, the informant had seen the defendant delivering *cocaine* inside the residence, and had seen the defendant sell *cocaine* to someone inside the residence. Id. at ¶2. The 28h Street informant mentioned only *cocaine*—not heroin, not cocaine base. The only true statement Malafa could have made about the information he received from the 28th Street informant, the defendant implies, was that the defendant was involved in *cocaine* trafficking.

The government responds that Malafa also knew, as he stated in paragraph 24 of the 8th Street affidavit (dkt. no. 13-8 at ¶24), that the defendant had a prior felony conviction for manufacturing/delivering more

than three grams of heroin.[8] Dkt. No. 15 at 14. This is true. Had Malafa included that information in paragraph 18, rather than placing it in a separate paragraph later in the affidavit, his statement that he "knew through past experience" that the defendant was involved in heroin trafficking would have had support separate from the information provided by the 28th Street informant.

The evidence shows that at the time Malafa signed the 8th Street affidavit, he knew from the 28th Street informant that the defendant was involved in cocaine trafficking, and he knew from the defendant's prior conviction that (admittedly eleven years earlier) the defendant had been involved in heroin trafficking. Had Malafa stated that he knew through prior experience that the defendant was involved in trafficking *cocaine* and heroin, the statement would have been true. But Malafa did not say that he knew through prior experience that the defendant was involved in trafficking *cocaine* and heroin. He said he knew that the defendant was involved in trafficking cocaine *base*—crack—and heroin. According to the 28th Street affidavit, the 28th Street informant said nothing about *crack*. Neither affidavit mentions the defendant having any conviction for *crack*.

The evidence provides one other source of information Malafa could have relied upon for his belief about the defendant's drug dealing. He referenced, in the second clause of paragraph 18, the search of the 28th Street residence, stating that that search revealed "indicia of narcotics trafficking." The police

---

[8] The government asserts that the defendant "has prior *convictions* [plural] for distribution of controlled *substances* [plural], including heroin." Dkt. No. 15 at 16 (emphasis added). Malafa mentioned in the 8th Street affidavit only one prior conviction for one controlled substance—the 2009 conviction for manufacture/delivery of heroin.

report documenting the results of the 28th Street warrant reflects that officers found marijuana, Clonazepam and Ecstasy in the residence, and Alprazolam (an anti-anxiety medication) in Lazarus Burns' pocket. Dkt. No. 13-6 at 4-5. The search did not reveal crack cocaine.

The evidence supports the conclusion that Malafa's statement that he knew from prior experience that the defendant was involved in trafficking *crack* cocaine was not true. Again, the court must ask whether the false statement was material, and whether there is evidence that Malafa made it intentionally or recklessly. The court cannot conclude that the statement was material. Malafa *did* have information giving him reason to believe that the defendant was involved in cocaine trafficking. He could have substituted the word "cocaine" for the words "cocaine base," and the first sentence of paragraph 18 would have been accurate. While arguably crack is more potent than powder cocaine, both are illegal. The court thinks it unlikely that had the commissioner known that Malafa had information indicating that the defendant was involved in *cocaine* trafficking, as opposed to cocaine *base* trafficking, the commissioner would have refused to authorize the warrant.

Nor does the evidence support the conclusion that Malafa knowingly or intentionally made the false statement. Malafa had information from the 28th Street informant that supported the statement that he knew the defendant was involved in illegal drug trafficking. He could have simply said "cocaine" instead of "cocaine base," knowing that both drugs were illegal. His inclusion of the word "base" seems more negligent, or sloppy, than an attempt to mislead the commissioner into issuing a warrant he knew he could not otherwise obtain.

The defendant makes two additional challenges to the second clause of paragraph 18. He challenges Malafa's statement that the 28th Street search

was executed at the defendant's "prior residence." The defendant insists repeatedly that the search of the 28th Street address revealed no connection between the defendant and that address.

In the 28th Street affidavit, Malafa stated that the 28th Street informant told him that the 28th Street address was "being used" by the defendant to store and distribute cocaine while armed "in a residence he lives in and controls at 3848 North 28th Street . . . ." Dkt. No. 13-5 at p. 5, ¶1. The informant also told Malafa that the defendant "arms himself with the firearm inside his residence . . . ." Id. at pp. 5-6, ¶2. Malafa stated that the informant had provided him with "detailed information of the criminal activity at [the defendant's] residence." Id. at p. 6, ¶4. Malafa indicated that the informant had told him that the defendant recently had bought, and was driving, a black Chrysler Sebring with no front registration plate, and Malafa personally observed that car in front of the 28th Street residence within the forty-eight hours before he signed the affidavit for the 28th Street warrant. Id. at ¶6. Finally, Malafa stated that the defendant was "associated" with the 28th Street address. Id. at page 8, ¶11.

The police report memorializing the 28th Street search indicates, as the defendant argues, that the defendant was not in the residence at the time of the search. Dkt. No. 13-6. Michaella Bohannon was there, as was Kenneth M. Spruell; three other individuals were present, too. Id. at 4. The police report does not mention any documentary evidence linking the defendant to the address, such as mail or identification.

When Investigator Gowin interviewed Michaella Bohannon four months later, he stated that he met with her "at her home located at 3848 N. 28th Street . . . ." Dkt. No. 13-7 at 1. This is the only *evidence* that the North 28th

73

Street address was Ms. Bohannon's home. Bohannon told Gowin that on the date of the search, she'd told an unnamed police officer that the defendant never had lived "at Ms. Bohannon's house," but that he did visit his cousin Kenneth Spruell there. Id. at 2. Bohannon told the police that the defendant had stored some of his belongings at her house "for about one week," but that he'd moved the belongings out in early July 2018 and that that was the last time she'd seen him. Id. Ms. Bohannon told Gowin that she'd told police she believed the defendant lived with his mother, Aretha Johnson, and that she'd taken the police to Ms. Johnson's address. Id. at 3.

The defendant insists that the fact that the search did not reveal any evidence that the defendant lived at the 28th Street address, combined with Bohannon's statements that the defendant never had lived there, show that Malafa's statement in paragraph 18 of the 8th Street warrant that the search had taken place at the defendant's "prior residence" was false. The government responds that Bohannon's affidavit links the defendant to the 28th Street address, because Bohannon is the defendant's aunt and would have reason to lie for him. Dkt. No. 15 at 14.

Gowin's choice of sentence structure appears to be responsible for the government's belief that Bohannon was the defendant's aunt. Gowin's affidavit stated that Bohannon told him that "she ha[d] known [the defendant] practically his whole life because he is her nephew, Kenneth Spruell's cousin." Dkt. No. 13-7 at 2. The government ignores the three words after the comma, and reads the sentence as, "she ha[d] known [the defendant] practically his whole life because he is her nephew." Perhaps Investigator Gowin might have clarified the relationship had he said that Bohannon had known the defendant practically his whole life "because he is the cousin of her nephew, Kenneth

Spruell." Or perhaps another comma might have helped; "she has known [the defendant] practically his whole life because he is her nephew, Kenneth Spruell's, cousin." Preferred sentence structure aside, one cannot read the sentence as written to state that Bohannon was the defendant's aunt unless one ignores the three words after the comma. Bohannon told Gowin that she knew the defendant because Kenneth Spruell (one of the people arrested on the scene at 28th Street) was her nephew, and the defendant was Mr. Spruell's cousin.

The government's speculation that Bohannon had reason to lie for the defendant is grounded in its misreading of the sentence describing their relationship. Perhaps, even though she isn't his aunt, Bohannon may have wanted to help the defendant—she stated that he visited her house and had stored some of his belongings there for a week or so.[9] But that is speculation on the government's part.

Clearing the fog of misinterpretation and speculation, the evidence shows the following: an informant told Malafa that the defendant lived at 28th Street and that the informant had observed drugs and a drug deal there; Bohannon allegedly told a police officer that the defendant never had lived there, but that he visited and had stored clothes there; Bohannon told a police officer that the defendant had moved his belongings out of the 28th Street address "in early July 2018;" and the search of the 28th Street address did not yield the defendant's presence or evidence indicating that he lived there.

---

[9] The defendant also asserts that the 8th Street affidavit did not mention that Bohannon said she told the officer that she'd never seen the defendant with a gun or selling drugs. Given that there is no evidence that Malafa knew of Bohannon's statements to the officer, this argument has little force.

This evidence does not support a conclusion that Malafa made a false statement in the 8th Street affidavit when he referred to 28th Street as the defendant's prior residence. Malafa signed the 28th Street affidavit on July 8, 2018. Dkt. No. 13-5 at page 9. Within the week prior, the informant had told Malafa that the informant had seen the defendant with drugs in that residence. Within the two days prior, Malafa had seen the black Chrysler Sebring parked in front of the house. The only evidence referenced in the 28th Street warrant that did not support the conclusion that the defendant lived there was Malafa's statement that Department of Corrections listed the defendant's supervision address as 2007 West Clarke Street. (Dkt. No. 13-5 at p. 8, ¶9.)

Like the Individual A theory, the Bohannon information is a red herring. Bohannon told Gowin that she had talked to "one particular male police officer." Dkt. No. 13-7 at 2. There is no evidence that that officer was Malafa. There is no evidence that Malafa knew that anyone had interviewed Bohannon or what she'd said in that interview. There are no police reports reflecting the interview. The information from Bohannon would give Malafa reason to question whether the defendant had lived at 28th Street only if he knew that information, and there is no evidence that he did.[10]

The evidence does not make a preliminary showing that Malafa made a false statement, or a reckless misrepresentation, in stating that the 28th Street search took place at the defendant's "prior residence."

---

[10] Had the 28th Street informant seen the defendant visit 28th Street often, seen that he had belongings there in early July 2018, seen his black Sebring parked there and seen him conducting drug deals there, the informant might have believed that the defendant lived at 28th Street.

The defendant's final argument regarding paragraph 18 is that Malafa misled the commissioner when he stated that the 28th Street search turned up "indicia of narcotics trafficking and unlawful possession of firearms." The defendant argues that the officers found a little marijuana, a little Ecstasy, some prescription medication, a shoulder holster with magazines, and a gun case with magazines; he maintains that these items do not constitute "indicia" of drug trafficking or unlawful possession of guns. He points out that the officers did not find scales, packaging material, cutting agent, drug residue or large amounts of cash. He says the holster, magazines and gun case were not found near the drugs, indicating indicia of gun ownership, but not of unlawful gun ownership.

The government responded that the quantities of drugs found at 28th Street were "substantial" (a characterization Judge Jones rejected), and that because the drugs were present in the residence, "it was reasonable to infer that the possession of firearms in connection with those substances would be unlawful," citing 18 U.S.C. §922(d)(3). Dkt. No. 15 at 15. The government also insists that while no charges resulted from the items recovered at 28th Street, "the case was presented to the ADA, thus belying [the defendant's] implication that the warrant execution revealed no evidence of serious criminal activity." Id.

The online edition of Black's Law Dictionary defines "indicia" as "[s]igns; indications. Circumstances which point to the existence of a given fact as probable, but not certain." https://thelawdictionary.or/indicia/ (last visited February 17, 2020). Whether the 28th Street search revealed "indicia"—signs or indications—of narcotics trafficking or unlawful gun possession depends on facts not in the evidence presented by the defendant, and on knowledge of the

drug trade. The court cannot say that Malafa's statement in the 8th Street affidavit was false or misleading based on the evidence in the record. The defendant has not made the substantial preliminary showing that this statement justifies a <u>Franks</u> hearing.

### 3. *Other information*

In considering whether the defendant's evidence makes a substantial preliminary showing that Malafa knowingly or recklessly made false or misleading statements or omissions, the court has observed that the evidence indicates Malafa may have had more information than he included in the 8th Street affidavit—information that could have addressed at least one of the defendant's criticisms. Malafa stated in the police report that the informant had reported that the defendant was selling what the informant believed "to be heroin, 'crack' cocaine base and pills." <u>Id.</u> Malafa did not explain in the 8th Street affidavit that the reason he believed the defendant to be involved in trafficking crack was because the 28th Street informant had told him as much. Nor did he mention that the 28th Street informant told him the informant believed the defendant was selling pills. This evidence implies that, rather than omitted information for fear that it did not support a finding of probable cause, Malafa may have omitted some information that would have supported such a finding.

### E. <u>Conclusion</u>

The defendant's evidence does support a conclusion that Malafa relied heavily on boilerplate that didn't always fit the circumstances of each separate search. It does support a conclusion that Malafa was imprecise, if not loose, in implying that certain pieces of information supported certain conclusions. It supports a conclusion that Malafa was not consistent in the way he related

information in search warrant affidavits versus police reports. Defense counsel did a lot of legwork, scrutinized Malafa's words in detail and found these problems. But the court cannot conclude that the problems the defense has identified add up to a substantial showing supporting a <u>Franks</u> hearing.

The court has presumed that the 8th Street affidavit was valid, has confined its review to the defendant's evidence and has considered whether that evidence makes a substantial preliminary showing that Malafa made materially false or misleading statements or omissions and whether he made them knowingly or recklessly. The court concludes that the defendant has not made the requisite substantial preliminary showing. The court finds that Judge Jones committed clear error in concluding otherwise. Because the court finds that none of Malafa's statements were materially false or misleading, it need not determine whether absent the allegedly false or misleading statements, the 8th Street affidavit would have supported a finding of probable cause.

## VIII. CONCLUSION

The court **SUSTAINS** the government's objections, dkt. no. 32, **REVERSES** Judge Jones's order granting the defendant's motion for a <u>Franks</u> hearing, dkt. no. 29, and **DENIES** the defendant's motion for a <u>Franks</u> hearing, dkt. no. 13.

The court's staff will calendar a status conference to discuss next steps in the litigation.

Dated in Milwaukee, Wisconsin this 18th day of February, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**