UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

─────────────────────────────────────────────────────────────

UNITED STATES OF AMERICA,

        Plaintiff,

   v.                                     Case No. 18-cr-196-pp

ZACHARY E. CLOYD,

        Defendant.

─────────────────────────────────────────────────────────────

**ORDER DENYING MOTION TO RECONSIDER (DKT. NO. 77)**

─────────────────────────────────────────────────────────────

      On April 7, 2021, the parties filed with the court a plea agreement. Dkt. No. 66. The agreement was governed by Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, id. at ¶12, which provides that a plea agreement may specify that the attorney for the government will "agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement)." The plea agreement stated the parties' understanding that if the court accepted the plea agreement, the court "would be bound by this recommendation and bound to sentencing the Defendant to a fully concurrent term of imprisonment of between 62 and 84 months." Id. at ¶12. The plea agreement did not define the phrase "fully concurrent term of imprisonment."

1

The court accepted the defendant's plea, subject to the binding plea agreement, on May 5, 2021. Dkt. No. 70.

Defense counsel filed a sentencing memorandum ahead of the sentencing hearing. Dkt. No. 74. Most of the memorandum explained why the court should not adhere to the career offender guidelines and discussed the defendant's background and history. Counsel then asked the court to impose a sentence at the low end of the agreed-upon range—62 months. Id. at 13. After explaining why he believed this sentence was sufficient but not more than necessary to satisfy the goals of the sentencing statute, counsel wrote:

> [The defendant] is serving a state revocation sentence. And, because of the laws governing the Bureau of Prisons, the BOP will not give credit for time served on another sentence prior to a defendant's sentencing. So in order to impose a fully concurrent sentence, to sentence [the defendant] as if he had been in federal custody since his arrest, the Court must adjust its judgment to account for the time that he has already served.
>
> [The defendant] has been incarcerated because of the offense in this matter since August 24, 2018, just over 35 months. See PSR at p. 2 & ¶¶13-17. So in order for the Court to impose a fully concurrent sentence of 62 months, it must subtract those 35 months from the requested 62. This equals 27 months.
>
> Then one final adjustment is necessary. The goal of a fully concurrent sentence is to sentence the defendant as if they had been in federal custody since their arrest. If [the defendant] had been in federal custody he would have earned good time credit for the past 35 months. (The BOP assumes an inmate will earn good time credit and awards it in advance; an inmate earns that credit by simply not misbehaving. And [the defendant's] behavior in the state DOC has been exemplary.) Federal law provides that an inmate is entitled to 15% good time credit (54 days per year) on their sentence. See 18 U.S.C. § 3624(b). 15% of 35 months is 5.25 months. So in order to give a fully concurrent 62-month sentence, sentencing [the defendant] as if he had always been in federal custody, the Court should impose a total sentence of 22 months concurrent in this matter. These adjustments were parties discussed in the parties'

2

plea discussions, and that sentence is what the defense requests now.

Id. at 15-16.

The government also filed a sentencing memorandum ahead of the sentencing date. Dkt. No. 75. While the government agreed that the "fully concurrent" language in the binding plea agreement required the court to "include a downward departure for the time [the defendant] has already served in state custody," it argued that the language did not *require* the court to depart further for the good time credit the defendant would have earned had he been in federal custody since his arrest. Id. at 6. The government opined that the court *could* depart further to account for the hypothetical good-time credit, but that it was not *required* to do so. Id. The government made clear that it did not "concede that a fully concurrent sentence requires a downward departure for good-time credit that *could have* been earned during the time spent in state custody awaiting sentencing," but also stated that the terms of the plea agreement did not prohibit the court from granting such a departure if it chose to do so. Id. at 8.

At the July 28, 2021 sentencing hearing, the court granted the defendant's request to sentence him at the bottom of the agreed-upon range (62 months), and adjusted that sentence under U.S.S.G. §5G1.3 to account for the time the defendant already had spent in state custody, which reduced the sentence to 27 months. The court declined, however, to reduce that sentence by another five months to account for the hypothetical good time credit the defendant might have earned had he been in federal custody since his arrest.

3

The following day, the defendant filed the instant motion to reconsider. Dkt. No. 77. He asserted that the court had "ruled" that a sentence at the bottom of the agreed-upon range "could not include an adjustment for good time credit." Id. at 1. He indicated that the parties' sentencing memos "created a consensus: under the plea agreement, the Court had discretion to adjust [the defendant's] sentence for good time credit if it wished." Id. at 4. The defendant indicated that at sentencing, the court had described the government as "disagreeing" that the definition of "fully concurrent" required an adjustment for good time credit, and asserted that the court "did not note that, per the government, this Court did not *have* to make an adjustment for good time credit, but could do so if it wished." Id. The defendant quoted the court as saying, "I agree with the government . . . calculating good time and giving [the defendant] good time that he may or may not have earned I don't think that is an appropriate definition of 'fully concurrent.'" Id. (citing Dkt. No. 76 at 1:12:52-1:13:18).

The defendant also asserted that when he said in his sentencing memo that the adjustment for hypothetical good time had been discussed by the parties in their plea negotiations, he had been referring to emails he sent to the government during plea negotiations, in which he argued that a fully concurrent sentence should include such an adjustment. Id. at 2. Conceding that the government did not "explicitly agree with" his argument, the defendant asserts that the government did not contest it, either. Id. Despite the apparent

4

lack of verification that there had been a meeting of the minds, the parties (including defense counsel and the defendant) executed the plea agreement. Id.

Defense counsel explains that a week before sentencing, he sent the government another email, reiterating his belief about what constituted a "fully concurrent" sentence. Id. at 2-3. He says that later on the day he sent that email, he filed his sentencing memo. Id. at 3. He says that the next day, the government filed its memo, disputing defense counsel's definition of that phrase but agreeing that the court had the discretion to adopt defense counsel's reading if it wished. Id. at 4.

After laying out this background, the defendant asserts that because the government did not dispute his communications laying out his understanding of what "fully concurrent" meant, he "understood" the term to mean what he believed it meant. Id. at 5. He then asserts that plea agreements are contracts, and that ambiguities in such a contract should be construed against the drafter—in this case, the government. Id. (citing United States v. Shah, 665 F.3d 827, 837 (7th Cir. 2011)). Defense counsel maintains that the phrase "fully concurrent" is "somewhat ambiguous, and says that because a court can look to extrinsic evidence to interpret ambiguous contract terms, the court should look at his emails to the government and his belief as to what "fully concurrent" meant in construing that term. Id. at 5-6.

Next, he asserts that the court has the discretion to reduce the defendant's sentence for the hypothetical good time credit if it chooses to do so, and he interprets the court's stated intention to impose a sentence at the

5

"bottom of the range" as a declaration of intent to impose a sentence as low as the parties agree it had the discretion to go. Id. He asks the court to reduce the sentence by another five months, to 22 months. Id.

At the time of sentencing, the court understood that both parties were of the view that the court had the discretion to reduce the defendant's sentence by the amount of hypothetical good time he might have earned had he been in federal custody since the date of his arrest. The court was not under the impression—at that time—that it did not have the discretion to do what the defendant had asked it to do in his sentencing memorandum. While the court's language was clumsy—the court talked about the "definition" of the phrase fully concurrent, and stated that it would not be "appropriate" to adjust the defendant's sentence downward for the hypothetical good time—it declined to make that adjustment, not because it believed that it did not have the authority to do so, but because it did not think it was appropriate to do so. In declining to reduce the sentence further, the court referenced good time that the defendant "may or may not have earned." The court said that because it felt that the defendant was asking the court to assume that if he had been in federal custody since his arrest, he would have earned all the good time credit he claimed; the court did not feel comfortable making that assumption or reducing the defendant's sentence further based on that assumption.

In considering the defendant's motion to reconsider, the court has done a small amount of research to find out whether other courts have faced this issue. The results of that (admittedly brief) research cause the court to wonder

Case 2:18-cr-00196-PP   Filed 08/04/21   Page 6 of 8   Document 82

whether it did, in fact, have the discretion to adjust the defendant's sentence based on the hypothetical good time credit even if it had wanted to do so. In United States v. Evans, 1 F.3d 654, 654-55 (7th Cir. 1993), the defendant made exactly this argument on appeal. Because the defendant already had served twenty-three months in state prison for the conduct that gave rise to his federal conviction and sentence, the district court subtracted those twenty-three months from the low end of the guideline range and imposed the balance of the sentence to run concurrently with the balance of his state sentence. Id. at 654. The defendant appealed, arguing that "he should have received good time credit against his federal sentence for the time he had already spent in state custody." Id. The Seventh Circuit succinctly rejected this argument, noting that under 18 U.S.C. §3624, it is the Bureau of Prisons, not the court, who decides whether a federally incarcerated person should receive good time credit. Id. The court stated that the defendant "must ask the Bureau of Prisons for the credit he seeks, and the district court did not err in refusing to award good time credit against his federal sentence for time spent in state custody." Id. at 655.

At least two other circuits have held the same. In Schleining v. Thomas, 642 F.3d 1243, 1248 (9th Cir. 2011), the Ninth Circuit held that "[b]ecause a prisoner can received [good time] credit only on time served on his federal sentence, and his federal sentence does not 'commence' until after he has been sentenced in federal court, [the defendant] is not eligible for [good time] credit for the 21 months he spent in state custody—serving a state sentence—before

7

imposition of his federal sentence," even where the district court imposed the federal sentence to run concurrently. And in <u>Lopez v. Terrell</u>, 654 F.3d 176, 190 (2d Cir. 2011), the Second Circuit held that a defendant may be awarded good time credit only for the portion of a defendant's imprisonment that constitutes a "federal sentence as defined under 18 U.S.C. § 3585."

So—the court is not as convinced as the parties that it had the discretion to reduce the defendant's sentence by the amount of hypothetical good time he might have earned had he been in federal custody since the date of his arrest. Even if the court did have such discretion, however, it declined to exercise it on the date of sentencing and declines to exercise it on reconsideration.

The court **DENIES** the defendant's motion to reconsider.

Dated in Milwaukee, Wisconsin this 4th day of August, 2021.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**
